## PRICE ET AL. *v.* HOLMES.

### [79 South. 89, Division B.]

GIFTS. *Gifts causa mortis. Evidence.*
> Under the facts as set out in its opinion in this case the court held that the evidence was not sufficient to sustain defendant's claim that he was the donee of a gift of personal property *causa mortis,* in accordance with a prior agreement with the donor, ·but the court held that the deed to realty set out in its opinion was, valid and binding.

APPEAL from the chancery court of Lawrence county. HON. D. M. RUSSELL, Chancellor.

Bill by Cora E. Price and others against W. T. Holmes. From a decree rendered, complainant appeals.

*John H. Arrington,* for appellant.

*.Patterson & McGehee,* for appellees.

ETHRIDGE, J., delivered the opinion of the court.

Mrs. Cora E. Price and others, daughters of D. J. Holmes, filed a bill in the chancery court of Lawrence county against W. T. Holmes, a son of D. J. Holmes, deceased, alleging that D. J. Holmes died seised and possessed of the northeast quarter of the southwest quarter and the north half of the north half of the southeast quarter of southwest quarter, section 34, township 5, north range 11 east, containing fifty acres which had been atempted to be conditionally conveyed by said D. J. Holmes and his wife to the defendant, W. T. Holmes, and a lot of personal property amounting to six hundred and seventy-five dollars, and that letters of administration had been duly granted on said estate, and appraisers appointed, but when the appraisers went to appraise the property that W. T. Holmes claimed all of said

property, and claimed that his father, D. J. Holmes, had conveyed the same to him; that after the death of D. J. Holmes, his son, W. T. Holmes, immediately took possession of all moneys, grain, hogs, cattle, and notes, and certificate of deposit, and claims the same as his own, and refused to recognize complainants' rights to such property. The deed above referred to was made Exhibit A to the bill, and was a conveyance in consideration of one dollar cash paid and further consideration hereafter mentioned in the deed, the further consideration being that W. T. Holmes would pay fifty dollars each to five of the daughters of D. J. Holmes, to wit, Victoria M. Pevy, Nannie I. Price, Lucy J. Willoughby, Mattie S. Rials, and Cora E. Price, and that each of said children shall have a lien on said land to secure the payment of her share. The deed further contains a reservation in the following words:

"It is agreed and understood between the parties hereto that the grantors shall have and enjoy the use and occupation of such lands until the death of the last surviving one of them and that within sixty days from the death of such last surviving one of the said W. T. Holmes or his heirs, shall pay the further consideration of this deed above mentioned."

This deed was signed and acknowledged by D. J. Holmes and Sarah A. Holmes on the 3d day of October, 1914, before J. O. Magee, justice of the peace, said deed made Exhibit A, containing the following indorsement or receipt thereon:

"We, the undersigned, being all the heirs and D. J. and Sarah A. Holmes, deceased, except the grantee herein, do hereby acknowledge receipt in full of the fifty dollars to each of us paid as specified in this deed, and we hereby authorize and request a complete cancellation of the vendor's lien herein created in our behalf."

It is alleged that this deed is void because it did not become effective at once, and because no provision was made for Gena C. Tynes and her five children; said children being the grandchildren of said D. J. Holmes, and said Gena C. Tynes being the wife formerly of the son of said D. J. Holmes, who was dead at the time of the making of said deed. A demurrer to this part of the bill affecting the land was sustained by the chancellor, and the defendant answered as to the personal property, denying that D. J. Holmes died seised and possessed of said property, and avers that said D. J. Holmes, prior to his death, and immediately upon the death of Sarah A. Holmes, his wife, made and entered into an agreement with defendant, whereby the defendant undertook and agreed to move into the house with said D. J. Holmes and upon the said lands, and to support and maintain said D. J. Holmes during the remainder of his life, and in consideration of this undertakng said D. J. Holmes gave and delivered to the defendant all personal property then belonging to said D. J. Holmes, and that in pursuance of this agreement the defendant moved into the house with the said D. J. Holmes, and said D. J. Holmes delivered to the defendant all his money and personal property, and certificate of deposit in the Citizens' Bank at Columbia, Miss., and that defendant became the sole and absolute owner of such property. It was shown by the complainants that the deceased, D. J. Holmes, owned this property in his lifetime and shortly before his death he caused his children to assemble at his home and divided certain effects belonging to his wife, then deceased, and stated to them that he had expected to have this money so he could divide the money that day, but that he was unable to get any one to go for the money, and that there would be another division; that this was said in the presence of the defendant and it was further said in the presence of the defendant that he did not have to pay the defendant anything.

The defendant was introduced as a witness in his own behalf, and testified generally to sustain his claim as to the agreement between him and his father set out in his answer, and testified generally in denial of the statements of the complainants as to what was said by his father in his presence. It is difficult to tell from the record just how much of the evidence of the defendant is covered by the objections in the record. It appears, however, that the chancellor sustained objections to much of this testimony. For instance it appears in the record that the following questions and answers were objected to:

"Q. State to the court just what the agreement was on which you moved to your father's house to take care of him. A. At the time he told me he didn't know what he was going to do with the land the next year. How come that to get up he went out to turn out the cows out of the lot one morning, and h. turned them out, and we stopped at the front to talk, and he told me he says, 'I don't know what I am going to do with my land another year; my darkey is going to leave me, and I don't know what I am going to do with it.' And I says, 'Have you thought about getting the darkey down on my place?' and he says, 'No,' and I says, 'Have got to move and come back to my place,' and he says, 'I wish you would get that darkey; see him for me;' and I told him I would talk to the darkey, and he said, 'Your mother can't live long, and if she don't, I just can't stay here.' I says, ' We may be talking too fast, and I hope we are, but we are talking now in case she dies there has got to be a change if she dies, and if she don't live and you don't stay here, I will come and work the place,' and he says, 'All right; that will just suit me; I won't think about moving; the land is yours anyway, and I won't charge you any rent nor nothing; all I want is a home;' and he mentioned everything on earth that he had and said,

118 Miss.—16

'Everything will be yours; you can do what you please with it.' ''

''Counsel for complainants: We object to that as incompetent, and move to exclude.

''The Court: The objection is sustained. Nobody was present when you were talking? A. No, sir.''

Continuing:

''Q. At the time your father died did he own any of this property that has been testified about in this case? A. No, sir; he did not. Q. At the time the appraisers came there, was there any property belonging to the estate at that time? A. No, sir. Q. You say that none of this property was in his possession at the time of his death? A. No, sir. Q. It had been turned over to you at that time? A. It had.''

''Counsel for complainants: We object to that.

''The Court: Objection sustained.''

Again:

''Q. Did you give your entire time and attention to your father and mother? A. Except three nights in the week. Q. The time that he delivered you that deed expressing the consideration there as a part of the consideration that you were to pay these heirs, his other five children then living, fifty dollars each, do you know just what that provision was made for, whether it was intended to take care of the balance due them or not, what was said about it? A. I don't understand the question. Q. I say at the time he delivered this deed to you, providing that you should pay fifty dollars to each of his five other children who were then living and pay it to them within sixty days after his death, do you know what his object was in making that provision, whether he meant that as a final provision or not?''

''Counsel for complainants: We object, the deed speaks for itself.

''The Court: Objection sustained. Q. For what purpose did your father indorse this time certificate

and these notes and deliver them to you? A. Well to become mine after he realized that he was not going to live long, or thought he was not, and he had done made our agreement, he just carried out his agreement.

"Counsel: We object to that.

"The Court: Objection sustained."

By eliminating the testimony of this witness there is no evidence in the record to uphold the decree of the chancellor as to the personal property. As we understand the objections and rulings of the court, they extend to the whole agreement testified to by the defendant, and it follows that the action of the chancellor as to the land is sustained and affirmed, but the decree as to the personal property is reversed, and the cause remanded.

*Affirmed in part and reversed in part.*