(80 South. 419)

RECHARD et al. v. COWLEY. (1 Div. 45.)

(Supreme Court of Alabama. Dec. 19, 1918.)

1. EQUITY &roll;316—WAIVER OF ANSWER UNDER OATH—EFFECT.

Where the bill expressly waived answer under oath, the answer could not be excepted to for insufficiency, in view of Ch. Pr. rule 34 (Code 1907, p. 1538).

2. CONTRACTS &roll;99(1)—PRESUMPTIONS.

In the absence of intimation of mistake, fraud, or imposition, it is to be accepted that the parties were entirely competent to contract, and freely entered upon such engagement as they made.

3. MINES AND MINERALS &roll;58—OIL AND GAS LEASES—CONSIDERATION.

Nominal consideration of $1 for mining lease granting privilege of prospecting and removing oil and gas during period of one year, to be paid for at stipulated rates, was a sufficient consideration.

4. MINES AND MINERALS &roll;73 — LEASES — CONSTRUCTION.

Construction of contracts relating to oil and gas should favor the owner where their terms admit of doubt, especially in view of the mobile character of such substances.

5. MINES AND MINERALS &roll;73 — LEASES — CONSTRUCTION.

So-called leases of oil and gas *held* not to effect a grant in præsenti of the oil and gas as a part of the realty.

6. MINES AND MINERALS &roll;73½—LEASES— CONSTRUCTION.

So-called leases of oil and gas *held* not to create a tenancy at will so far as the lessor was concerned, though the lessee had the option of retiring from the agreement at any time.

7. MINES AND MINERALS &roll;58—CONTRACTS— MUTUALITY.

Oil and gas leases, reciting consideration of $1, and authorizing lessee at any time within one year to prospect for and to remove oil and gas at stipulated rates, to be paid upon removal, were not void for want of mutuality merely because they failed to bind the lessee to prospect within one year.

8. MINES AND MINERALS &roll;58—CONTRACTS— MUTUALITY.

Oil and gas leases, authorizing lessee to prospect at any time within one year, were not void for want of mutuality, merely because they also gave the lessee the option of surrendering his rights under the contract at any time.

9. MINES AND MINERALS &roll;58—CONTRACTS— MUTUALITY.

Assuming that provision of oil and gas lease authorizing lessee to surrender and refuse to prospect within the year's option, "in consideration of the agreements herein contained," should be restrictively referred to lessor's obligation, the question was not available until the lessee attempted to surrender and abandon contract.

&roll;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

202 ALA.—22

Appeal from Circuit Court, Mobile County; Norvelle R. Leigh, Jr., Judge.

Bill by William Cowley against Frank S. Rechard and another. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

Bestor & Young, of Mobile, for appellants. William Cowley, of Mobile, pro se.

McCLELLAN, J. [1] Statutory bill by Cowley, appellee, against Rechard and Stevens, appellants, to quiet the title, etc., to certain lands described in the bill. Code, § 5443 et seq. The respective answers of the respondents set up, propounded their several claims as upon so-called oil and gas leases executed to them by one Robertson, who, subsequent to the execution and recordation of the leases, conveyed the fee to Cowley. By written agreement on file the parties established conclusively the truth of all the statements of fact contained in the bill and in the answers. The order of submission defined it as being "on the bill, answer [i. e., answers], and on the sufficiency of the answer of respondents, and the agreement of counsel." There were no pleas on file—none involved in the submission—to invoke application of the pertinent doctrine stated in Glasser v. Meyrovitz, 119 Ala. 152, 155, 24 South. 514. Independent of other insuperable obstacles to a submission questioning the sufficiency of the answers, the bill expressly waived answer under oath, and, according to the prohibition of rule 34 of Chan. Prac. (Code, p. 1538), the answer could not, for that reason, be excepted to for insufficiency (Sims' Chan. Prac. § 512). There is argument for appellee to a different effect. These considerations will suffice to indicate its unsoundness.

[2] The decree recites that the submission included a decree pro confesso. None appears in the transcript. The decree concluded that the respondents had "no estate or interest in, or incumbrance on," the lands described in the bill. We understand from the briefs filed by the parties that the basis of the court's action was the conclusion that the leases, propounded by the respondents, were nullities on their faces because of the want of mutuality. There is in the cause not even an intimation of mistake, fraud, or other imposition in respect of these contracts. It is to be accepted that the parties were entirely competent to contract in the premises and freely entered upon such engagement as they made. The instruments relied upon by the respondents (appellants) are practically identical. The one to Stevens bears date February 15, 1917, and the one to Rechard bears date February 21, 1917, both describing the same land. Robertson (unmarried), the then owner of the land, signed by mark, two witnesses attested his execution of each of

the papers, and both were acknowledged by Robertson before a notary public. Robertson alone signed the instrument in favor of Rechard, while that of Stevens appears to have been also signed by "Thomas J. Junker, Agt." The material provisions of these instruments are as follows:

"This agreement of lease, made the 21st day of February, 1917, witnesseth: That Jeff Robertson (widower), of Theodore, Ala., lessor, in consideration of one dollar ($1.00) paid to said lessor by Frank S. Rechard, the receipt whereof is hereby acknowledged, does hereby grant, demise, and let unto the said lessee all the oil and gas in and under the following described tract of land, also said tract of land for the purpose of operating thereon for said oil and gas, with the right to use water, oil, and gas therefrom, on this and adjoining property, for operating purposes, and all other rights and privileges convenient for conducting such operations, and the right of ingress and egress, with the further right of transporting oil, gas, steam, power, and water, or either or any of them, upon and from and to said tract, and waiving all rights to claim or hold any property or improvements placed or erected in or upon said land by the lessee as fixtures or as part of the realty, and all said property and improvements may be removed by the lessee at any time, which tract of land is situate in the state of Alabama, county of Mobile. * * *

"But no wells shall be drilled within two hundred (200) feet of the present buildings, unless both parties consent thereto, lessee to pay for all damages to growing crops by reason of operations for oil and gas.

"To have and to hold the same unto and for the use of the lessee, his heirs and assigns, for the term of twelve (12) years from the date hereof, and as much longer as oil and gas is found in paying quantities thereon; yielding and paying to the lessor one-eighth part of [or] share of all the oil produced and saved from the premises, delivered free into tanks or pipe lines to the lessor's credit; and at the rate of market price dollars for each three months, for each well which shall produce only gas, so long and during the time the gas therefrom shall be sold by the lessee for use off the premises, or the lessee may pay the lessor $100.00 for as long as gas is found in paying quantities year lease on each gas well; the lessor to have free use of gas for his residence, he paying for the piping.

"Nothing herein contained shall prevent the lessee from shutting down or from abandoning any well, or from pulling and removing the tubing, casing, and other property out of and from any well or wells at any time.

"Provided, however, that this lease and agreement shall become null and void, and all rights hereunder shall cease and determine, unless a well shall be commenced on said premises within one year from the date hereof, or unless the lessee shall pay at the rate of twenty-five Cts. Pr. A. in advance for each additional year such commencement is delayed;

"Provided, further, that in case the first well drilled on said premises shall be nonproductive, then this lease and agreement shall become null and void, and all rights hereunder shall cease and determine unless a second well shall be commenced on said premises within one year after completion of said nonproductive well, or unless

the lessee shall pay at the rate of twenty-five Cts. Pr. A. for each additional year the commencement of said second well is delayed.

"Said payments may be made direct to lessor, or by bank check to the order of said lessor, mailed to his post office address mentioned, or by check deposited for said lessor, or his heirs or assigns, in the First National Bank at Mobile, Alabama.

"And it [is] further agreed that the lessor, in consideration of the agreements herein contained, agrees that the lessee, his heirs or assigns, may at any time surrender up this lease, by delivering the same back to the lessor, his heirs or assigns, and be thereby forever discharged from all obligations to accrue under this lease, and thereupon this lease shall be and remain null and void, and of no further effect, and whatever moneys shall have been received by the lessor herein shall be retained by him."

This bill was filed May 9, 1917, within approximately three months of these instruments' execution. No question is made with respect to the joinder of these respondents, who claim under distinct instruments, of different dates, relating to the same tract of land. Consideration of this possible question is not undertaken.

No question is made with respect to the relative rights of Stevens and Rechard, or with respect to the effectiveness of the instrument executed to Stevens several days subsequent to the execution of the instrument to Rechard. See Brown v. Spilman, 155 U. S. 665, 672, 673, 15 Sup. Ct. 245, 39 L. Ed. 304. These possible inquiries are not considered.

[3] These instruments appear to have been efficiently executed and delivered so as to bind Robertson and his successor, Cowley, if they are otherwise valid. The nominal consideration—one dollar—the receipt of which was therein formally acknowledged by Robertson, was effective to support the obligation assumed by Robertson, whereby rights were intended to be and were conferred on the "lessee." Davis v. Wells, 104 U. S. 159, 167, 168, 26 L. Ed. 686; Lawrence v. McCalmont, 2 How. 426, 452, 11 L. Ed. 326.

The intent in these writings was to confer the right, the privilege, on the "lessees" of prospecting the land for oil and gas and to take it when found. Oil and gas are furtive, migratory, self-transmissive minerals; and because of this characteristic or quality contracts and rights relating thereto require the application of principles different, in many respects, from those applicable to other minerals that are not affected with the characteristics a learned court has described 'as feræ naturæ. Ohio Oil Co. v. Indiana, 177 U. S. 190, 202, et seq., 20 Sup. Ct. 576, 44 L. Ed. 729; 18 R. C. L. pp. 1205 et seq.; White on Mines and Mining, §§ 162 et seq. As our statement of the limited subject of this appellate review serves to disclose, the present appeal does not invite or involve consideration of the rules of duty that, in certain circumstances, rest on the party who has the right to prospect for, and when found to

take, oil and gas, to be diligent in so doing, to the end that the owner's land may not be unduly incumbered with this outstanding privilege or right to explore, or that the mineral that may be under his soil may not be lost to the owner of the land, through its self-transmission or removal from] the reservoir beneath his soil, by delay of the "lessee" in prosecuting the operation to appropriate it. See Steelsmith v. Gartlan, 45 W. Va. 27, 29 S. E. 978, 44 L. R. A. 107, 113.

[4-6] The construction or interpretation of contracts relating to oil and gas, where their terms admit of doubt or uncertainty, should favor the owner—the "lessor," so to speak—because of the peculiar characteristics of these minerals. 27 Cyc. p. 722, and citations in note 41. It is manifest, from the terms of these instruments and the object they undertook to effect with respect to the peculiar minerals in contemplation, that no grant in præsenti of the oil and gas as a part of the realty was intended. It is also clear that no tenancy at will was created, since the instruments fixed, so far as the "lessor" was concerned a minimum term for the exploration and the possession to accomplish that end. Brewster v. Lanyon Zinc Co., 140 Fed. 801, 807, 72 C. C. A. 213, opinion by Judge Van Devanter. For an effective, though nominal, consideration, the owner conferred on the "lessee" the right, the privilege, to explore for oil and gas, to enter for that purpose, to operate to that end, and to take the oil and gas that might be found; whereupon the compensation to the owner should be as provided in the writing. .

[7, 8] This privilege with its attendant rights of limited entry and possession, was open to be availed of by the "lessee" for twelve months, and for a longer period in certain circumstances defined in the writing. The "lessee" did not engage, did not bind himself, to explore for oil and gas at any time or within any period short of one year, and that in the alternative; but this absence of obligation to explore, etc., within a period not beyond one year or alternatively, did not affect the contract with anything unfavorable or fatal to its validity. He paid an effective consideration (though nominal) for this right, this privilege, and it was his to enjoy and to avail of approximately nine months (of the twelve stipulated) after this bill was filed, within three months after the "lease" had been executed and delivered and recorded. The "lessee" did not oblige himself to find oil and gas, or to make the effort so to do, within the period during which the successor of the owner impleaded him in this cause. It is supposed that the insertion in the contract of the reservation of right in the "lessee" to surrender the "lease" and cancel the contract operated to affect, and thus avoid, the contract with a want of mutuality. This reservation vested in the "lessee" an option to determine the contract, which, for a consideration, had clothed the "lessee" with the privilege stated. This option in the "lessee" to cancel was supported by the consideration that vested in him the right, the privilege, of prospecting for oil and gas on the land described in the instrument, in consequence of which it necessarily results that the contract was not wanting in mutuality. The fact that one may, at his election, surrender a right (not avoid an obligation) which he has for a consideration acquired could not justify the conclusion that the right for which he paid never was his to surrender. That there is no want of mutuality effected by the reservation of an option to surrender and cancel the contract, before the even minimum term of its prevalence, has been affirmed in Brewster v. Lanyon Zinc Co., 140 Fed. 801, 807, 72 C. C. A. 213, and other cases therein cited; 9 Cyc. p. 334. It is not inappropriate, in this connection, to reproduce the general observations made by the Supreme Court in Guffey v. Smith, 237 U. S. 117, 35 Sup. Ct. 531, 59 L. Ed. 856, in reference to a like surrender clause in an oil and gas "lease":

"Some criticism is directed against the reserved option to surrender, but it is difficult to perceive how it could be declared inequitable. If it was not exercised the lessee would be bound by his covenants, and if exercised the lessor would be free to deal with the premises as he chose. A surrender was not to affect any existing liability, but only to avoid those 'thereafter to accrue.' A like clause is in the subsequent lease, and, according to the evidence and several reported decisions, is of frequent occurrence in such instruments."

[9] If, as is suggested, the phrase, "in consideration of the agreements herein contained," upon which it is recited the "lessor" agreed that the "lessee" might, at his option, cancel the contract, discharging "all obligation to accrue [i. e., in the future] under this lease," should be restrictively referred to the binding quality of this feature of the contract upon the "lessor," then that question could not arise until the "lessor," or his successor in right, sought to prevent the "lessee" from exercising the option to surrender and cancel the contract.

The court erred in its conclusion that the contracts were void for want of mutuality. The decree is reversed. The cause is remanded for such further consideration as may seem appropriate.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.