(93 South. 28)

### MILLER et al. v. WOODARD. (6 Div. 545.)

(Supreme Court of Alabama. April 13, 1922.)

**1. Quieting title ⬳12(9)—Complainant must allege and prove peaceable possession.**

In actions to quiet title to land, complainant must allege and prove peaceable possession, actual or constructive, as distinguished from a disputed or scrambling possession.

**2. Mines and minerals ⬳58—Lease for more than statutory period held void only as to excess.**

Under Code 1907, § 3418, limiting leasehold estates to 20 years, an oil and gas lease for more than the statutory period was of contractual privilege or right to the extent of the statutory period.

**3. Mines and minerals ⬳78(7)—Averments of bill for forfeiture of lease held sufficient.**

Averments of bill in suit for forfeiture of an oil and gas lease, that lessee had not done any of the things mentioned in the lease, and for a period of 10 years had ignored and abandoned prospecting, testing, developing, or operating of oil wells or oil lands in the zone mentioned in the lease and applicable to the lands

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

in question, and made no effort to comply with the lease, was sufficient averment of forfeiture.

Appeal from Circuit Court, Winston County; T. L. Sowell, Judge.

Bill by William M. Miller and another against H. G. Woodard, to declare forfeiture of leases and for other relief. From a decree sustaining demurrers to the bill, complainants appeal. Reversed and remanded.

Travis Williams, of Russellville, for appellants.

The consideration of the lease failed, and it became forfeited if oil or gas was not discovered, or if the lessee failed to do the proper testing for a term of years. 135 Ala. 219, 34 South. 960; 27 Cyc. 734 and 739. See, also, the following Alabama cases: 151 Ala. 133, 43 South. 838; 151 Ala. 207, 44 South. 109, 125 Am. St. Rep. 24; 180 Ala. 128, 60 South. 273.

Bankhead & Bankhead, of Jasper, for appellee.

Equity will not aid affirmatively to enforce a penalty or a forfeit. 16 Cyc. 80; 180 Ala. 128, 60 South. 273. Counsel discuss other matters, but without further citation of authority.

THOMAS, J. The instant bill was to declare that a forfeiture existed in leases, and to remove a cloud from title because of the fact of such forfeiture, and for injunctive relief.

It is averred that on May 14, 1910, W. N. Miller executed and delivered to Charles D. Pantaze the instrument made a part of the bill as Exhibit A; that on February 21, 1914, W. N. Miller and W. M. Miller executed and delivered to H. G. Woodard the instrument in writing made a part of the bill as Exhibit B; that said Woodard had theretofore in some manner "become the owner of the Pantaze lease (Exhibit A) and of all rights under and by virtue of said lease, if there were any rights thereunder; and that the said Charles D. Pantaze has now no interest of any kind or character by virtue of said lease, or in the lands described" in the bill and lease. It is further averred that the portion of the lands particularly described in said exhibits "known as the W. N. Miller lots" is owned in fee simple by complainant, and was his at the time of the execution of Exhibit B; that he is in possession of the lands described, and there is no suit pending in any court to test the validity, strength or sufficiency of his title.

[1] The necessary averment of a bill under the statute to quiet title to real estate was the subject of recent discussion in Davis v. Daniels, 204 Ala. 374, 85 South. 797; Burgin & Hicks v. Hodge (Ala. Sup.) 93

South. 27,[1] and the averment that complainant is in possession of the lands described, etc., is not the equivalent of the averment that he was in peaceable possession of the lands, actual or constructive, at the time the bill was filed. The necessity for the averment and proof that complainant is in the peaceable possession of lands, actual or constructive, as distinguished from a disputed or "scrambling" possession, was considered in Foy v. Barr, 145 Ala. 244, 39 South. 578; Carr v. Moore, 203 Ala. 223, 82 South. 473; Burgin & Hicks v. Hodge, supra. No specific ground of demurrer challenged the bill for this failure of averment. Respondent, however, waived such defective averment, and challenged the bill on the grounds that it was without equity, stated no sufficient grounds for forfeiting the several lease contracts that were not subject to forfeiture, that the averments are such as to show the oil and gas sought to be disposed of by the written instruments were "vested in the respondent," and that the complainants are not "in the possession of the oil and gas in said lands." The subject of the title, right, and possession of limited or qualified interests in land has been frequently discussed by this court, as timber rights (McMillan v. Aiken, 205 Ala. 35, 40, 88 South. 135; Irwin v. Shoemaker, 205 Ala. 13, 88 South. 129; Long v. Nadawah Lbr. Co., 202 Ala. 523, 81 South. 25; Christopher v. Curtis-Attalla Lbr. Co., 175 Ala. 484, 57 South. 837; Shepard v. Mt. Vernon Lbr. Co., 192 Ala. 322, 68 South. 880, 15 A. L. R. 23; Chastang v. Chastang, 141 Ala. 451, 37 South. 799, 109 Am. St. Rep. 45), mineral rights (Majestic Coal Co. v. Anderson, 203 Ala. 233, 82 South. 483; Hooper v. Bankhead, 171 Ala. 626, 634, 54 South. 549; Bruce Coal Co. v. Bibby, 201 Ala. 121, 77 South. 545; Collins v. Smith, 151 Ala. 133, 43 South. 838; Brooks v. Cook, 135 Ala. 219, 34 South. 960; B'ham Fuel Co. v. Boshell, 190 Ala. 597, 67 South. 403), and that of oil and gas (Shannon v. Long, 180 Ala. 128, 60 South. 273; Collins v. Abel, 151 Ala. 207, 44 South. 109, 125 Am. St. Rep. 24; Rechard v. Cowley, 202 Ala. 337, 80 South. 419; Majestic Coal Co. v. Anderson, supra).

It is averred of his failure of compliance with conditions subsequent contained in the lease that respondent Woodard has not entered into possession of said lands or any part thereof under the written instruments exhibited, "has not done or performed any of the things mentioned in said exhibit and that for a period of about 10 years he has completely ignored and abandoned prospecting or testing and developing and operating of oil wells or oil lands in the zone mentioned in said Exhibit B, and particularly on the lands in the section of the county where the lands described" in said exhibit

[1] Ante, p. 315.

"are located, and has completely abandoned all production or operation of oil or gas or minerals [in that] territory, and is making no efforts, and has made no efforts for a period of about 10 years, to produce either oil or gas, or other minerals." The nominal consideration mentioned in the exhibits is averred to have been returned to the said Woodard, with accumulated interest; that the main consideration leading to the execution of the contracts "was the development and production of oil and gas on the lands described therein, and putting same on the market and reaping an income by the parties to the contract"; that it was not agreed by and between the parties, and not their contemplation that "the said leases would be executed and delivered and a test well driven down and operations abandoned, and the oil and gas rights therein held indefinitely," by the said grantees; but that the moving consideration was "that active operations would be engaged in, until it was ascertained if oil or gas was contained in, on, or under said lands, in commercial quantities," and, in the event thereof, that the same would be developed and "put on the market, so that the owner of the land would reap the income mentioned in the lease."

The prayer of the bill was threefold, viz.: (1) That it be ascertained that Woodard had forfeited all rights, title, and interest to the lands described, and to the oils, gases, and minerals mentioned therein; (2) that, the leases being of record, the register be directed by decree of court to write on the margin thereof the words "declared void by the decree of the chancery court"; (3) that respondent or other persons claiming by, through, or under him be enjoined from asserting any rights under the written instruments exhibited.

An inspection of said exhibits discloses that Exhibit A recites that, in consideration of $1 and the further consideration of the stipulations, rents, and covenants, parties of the first part "granted and leased" said lands to the parties of the second part, "for the purpose of mining for petroleum oil, gas, coal, iron, clay, zinc, stone, gold, or silver, and other mineral substances, and for the purpose of raising, pumping, mining, and transporting the same from and over the premises" described, to have and to hold the same premises [therein specifically described] for said purpose, "for and during the term of 20 years from the date hereof, and covenant to renew this lease, from time to time, for the terms allowed by law, and as long thereafter as oil, gas, or other mineral substances can be produced in paying quantities," stipulating the payment to parties of the first part of 5 per cent. of the petroleum or other valuable volatile or mineral substance piped, pumped, or transported, or mined, from the premises, and for payment of gas marketed, etc., for the royalty of 5 per cent. of the petroleum, coal, iron, clay, zinc, stone, or gold and silver and other minerals taken from the lands. Conditions subsequent are contained to the effect that it is agreed between the parties that, if "a well is not put down on said described lands within two years, this lease to be null and void, subject to approval to second parties," granting the right to remove from the lands all machinery, buildings, or fixtures on the ground, and also the privilege of sufficient water or gas to run the engine used in prosecuting the business, and right of way, etc.

Parties of the second part agreed to commence operation by prospecting for mineral on one of the leases taken in connection with the other herein, within two years of the date thereof, and further agreed that, unless operations were begun within two years from the completion of the "test well or discovery of some mineral deposit" as indicated in the lease, the second parties should pay parties of the first part a rental of "10 cents per acre per year" until the work was commenced thereon, provided such work was not commenced on test well or mineral deposits or payment made as specified "for two years," then the lease was declared to be null and void. Lastly, it is stipulated that if "one test well is put down, or the mineral development is commenced on any of the lands taken in connection with this lease, then the terms of this lease shall run for the full term of 20 years, without additional payment by the parties of the second part"—the sinking of one well "on land taken in connection with this lease" being declared "sufficient consideration to the party of the first part" moving from second party.

The subject of Exhibit B is oil and gas in paying quantity and quality, and it is stipulated therein that party of second part should prospect for the same at his expense, and "should oil or gas in paying quality and quantities be by second party found anywhere within said area, the time and method of making exploration for and development of the same, if found on the lands hereinafter described, must of necessity be left to the sound judgment and discretion of the second party, now in consideration of the premises and $1 to first party by second party paid, and receipt of which is acknowledged and in consideration of the time, labor, risk, and expense which second party shall spend or incur in prospecting for and in attempting to find oil or gas in commercial and merchantable quantities and qualities within said area, and in consideration of the terms and provisions hereof, first party do hereby grant and convey to second party, all of oil and gas in, on, or under the following described lands, situated in Winston county, Alabama, to wit" (specifically describing the same). It stipulates for the usual

rights, and "for drilling, discovering, development, raising, pumping, piping, storing, preparing for market, refining, transporting, shipping, and selling the same from the said lands," and for the use of main or branch pipe lines, railways, tramways, dirtways, buildings, plants, houses, and other machinery, ways, works, and appliances necessary or convenient for all or any of such purposes, and for all "stove materials and water thereon necessary, or covenanted to be used to accomplish all or any of said purposes" upon the limitations and provisions stipulated, and among which were that party of second part should at his risk and expense "continue prospecting for oil and gas to the extent of boring one test well within three years from the date of this instrument," and within the area indicated; that oil or gas found on complainants' land might be taken and sold at a reasonable profit, the privileges and rights of taking, removing, and selling the same to remain in full force and effect until all of said oil or gas which said second party can take and remove therefrom at a reasonable profit, not to exceed the period of "99 years from the date of the" instrument. Specific provision is made for such removal and sale, right of way, accounting, etc., stipulating for the right of purchase of the fee; lastly covenanting that "all rights, powers, and privileges * * * shall pass to the personal representative, heirs, devisees, successors and assigns of said" respective parties.

[2] Were the contracts ambiguous, they should be construed in favor of the owner, in view of the character of the substances dealt with in Exhibit B. Rechard v. Cowley, supra. However, the terms of each exhibit admit of no doubt of the intention of the parties; the one being the lease of oil and gas, the other of oil, gas and other minerals for a term of years authorized by law. At the date of the execution thereof the term of leasehold estates was 20 years. Code 1907, § 3418; Crawford v. Carlisle, 206 Ala. 379, 89 South. 565, 576; W. U. Tel. Co. v. L. & N.. 202 Ala. 542, 548, 81 South. 44. In the matter of the leasehold estate stipulating for an ·excess of statutory authority, the same was of contractual privilege or right (into which the law entered and became a part) to the extent of the statutory period. Mobile Elec. Co. v. City· of Mobile, 201 Ala. 607, 79 South. 39, L. R. A. 1918F, 667; Robertson v. Hayes, 83 Ala. 290, 3 South. 670; Trammel v. Chambers Co., 93 Ala. 388, 9 South. 815; Weller v. City of Gadsden, 141 Ala. 642, 37 South. 682, 3 Ann. Cas. 981; Gadsden v. Mitchell, 145 Ala. 137, 40 South. 557, 6 L. R. A. (N. S.) 781, 117 Am. St. Rep. 20. To avoid confusion, it may be noted that there was a short period of time, viz. from March 1, 1901 (Acts, p. 1874), to the adoption of the present Code (April 1, 1908), in which leasehold estates of 99 years were authorized. The instant lease, stipulating for the exercise of the right granted for a period of 99 years from the date thereof (February 21, 1914), was limited by section 3418 of the Code.

[3] The averment of nonperformance, that respondent had not done any of the things mentioned in the exhibits and for a period of 10 years had ignored and abandoned prospecting, testing, developing, or operating of oil wells or oil lands in the zone mentioned and applicable to the lands in question, making no effort to comply with the conditions of the contract, was sufficient averment of forfeiture. In Shannon v. Long, 180 Ala. 128, 60 South. 273, the instrument which operated as a cloud on the title was a lease providing that the same should become null and void upon noncompletion of the act therein stipulated; the lessee agreeing to begin operations in 4. months and pursue the same with diligence till completed, unavoidable delays and accidents excepted. The instant bill was sufficient to bring the case within the influence of foregoing authorities, and it was not subject to demurrer directed thereto: Majestic Coal Co. v. Anderson, 203 Ala. 233, 82 South. 483; Collins v. Smith, supra; Collins v. Abel, supra; Brooks v. Cook, supra.

The judgment of the circuit court in equity is reversed, and the cause is remanded for further proceedings as may be deemed necessary. · .

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.