(82 South. 473)

CARR et al. v. MOORE et al.    (5 Div. 724.)

(Supreme Court of Alabama.    May 15, 1919.
Rehearing Denied June 19, 1919.)

1. MORTGAGES �køø186(5)—PRIOR MORTGAGE—NOTICE—EVIDENCE.

In suit to quiet title under Code 1907, § 5443 et seq., the parties claiming title through mortgages from a common source, evidence *held* to show that mortgagee in mortgage upon which respondents base their title was informed of prior mortgage upon which complainants based their title before and at the time he took the second mortgage.

2. EVIDENCE ⊙øø183(11) — SECONDARY EVIDENCE—PREDICATE—SUFFICIENCY.

Predicate laid *held* insufficient to establish loss, destruction, etc., of mortgage so as to make admissible certified copy from records in office of probate judge.

3. EJECTMENT ⊙øø117—JUDGMENT IN EJECTMENT SUIT AS A BAR.

That there was an adverse decision as to mortgage through which complainants claim in one ejectment suit would not give absolute title to respondents claiming through mortgagee under a later mortgage in view of Code 1907, § 3858, requiring two such judgments to bar suit.

4. QUIETING TITLE ⊙øø44(4) — EVIDENCE OF TITLE—SUFFICIENCY.

In suit to quiet title under Code 1907, § 5443 et seq., the parties claiming title through mortgages from a common source, *held*, that respondents failed to connect themselves with the legal and equitable title or to show their legal or equitable right or claim thereto.

5. QUIETING TITLE ⊙øø12(9)—WHO MAY SUE—ONE IN PEACEABLE POSSESSION.

Under Code 1907, § 5443, one in peaceable possession under a claim of ownership, as distinguished from possession which is disputed, may sue to quiet title; but, where the possession as distinguished from the right of possession is disputed, the suit will not lie.

6. QUIETING TITLE ⊙øø44(1)—SHIFTING BURDEN OF PROOF.

In suit to quiet title, complainants' showing of title and possession *held* sufficient to shift the burden to respondents to show actual possession.

7. QUIETING TITLE ⊙øø12(9)—PEACEABLE POSSESSION—SCRAMBLING POSSESSION.

Former possession of respondent's ancestor or respondents before bill was filed and their claim of ownership *held* not to change the character of the complainant's peaceable possession taken and maintained immediately preceding and at the time bill to quiet title was filed, nor make possession of complainants a "scrambling possession."

Appeal from Circuit Court, Tallapoosa County; S. L. Brewer, Judge.

Bill by Claude L. Moore and others against Mrs. J. A. Carr and others. Decree for complainants, and respondents appeal. Affirmed.

---

James W. Strother, of Dadeville, for appellants.

Bulger & Rylance, of Dadeville, for appellees. .

THOMAS, J. The bill was to clear title to lands. Code 1907, § 5443 et seq.; Gill v. More, 76 South. 453, 459.[1] The issue was of fact as to the ownership thereof and whether the owners were in its peaceable possession when the bill was filed.

The parties to the record claim title from a common source—through mortgages from H. F. Cotton and wife. The source of complainants' title was a mortgage given by the Cottons to John W. Thornton, executed and acknowledged on February 21, 1908, and duly filed for record January 19, 1909, which mortgage was foreclosed on January 23, 1917. The purchaser was one of the complainants, Claude L. Moore, to whom the mortgagees, John W. Thornton and wife, made the deed on January 23, 1917. Thereafter (October 29, 1917) said Moore conveyed a two-thirds interest in the land to his brothers, John W. and Judson L. Moore, complainants with him in the instant bill. On November 5, 1917, all the "lawful heirs of John Thornton," deceased, conveyed the land to complainants.

The respondents, Mrs. J. A. Carr, Miss M. C. Carr, and N. S. Carr, allege in their answer that J. A. Carr, the husband and father, respectively, of respondents, for a valuable consideration had purchased of W. B. Carleton a mortgage on the lands, which mortgage was executed and acknowledged by H. F. Cotton and wife January 14, 1909, and duly filed for record January 20, 1909; that before maturity this mortgage and the debt secured thereby were transferred and assigned to said Carr (March 2, 1910), who duly foreclosed the same· on June 25, 1910, according to recitals contained in the deed of T. S. Ruffin to Carr. It was purchased by Ruffin, who thereafter, July 2, 1910, conveyed it to Carr. It is further averred that Carr died intestate, leaving respondents as his only heirs at law; that after the purchase their father went into the possession of the land and so remained to the time of his death; that respondents then "went in possession of said lands, and did during one year rent the same to one or more of these complainants; and that they have remained in possession until this year, when a negro went into possession of a portion of the same; and that he has not surrendered the possession [of] the same; * * * and that the said Thornton at the time of the execution of said mortgage to the said Carleton was in possession of said lands."

It is noted of complainants' chain of title that the prior mortgage by Cotton to Thornton is dated February 21, 1908; while the subsequent date of the mortgage by Cotton to Carleton (shown in respondents' chain of title) is January 14, 1909. However, the Cotton-Thornton mortgage was duly recorded on January 19, 1909, five days after the date of execution of the Cotton-Carleton mortgage and before the record of the later mortgage on January 20, 1909.

The primary question of fact—did Carleton have knowledge or notice of the existence of said previous mortgage given by Cotton to Thornton, through which complainants claim title—is answered in the affirmative by the mortgagor, his wife, and Mr. Thornton. It is not controverted that Thornton sold the lands to Cotton, taking his mortgage in question to secure the balance of the purchase price; that Carleton's mortgage was as security for materials that had been furnished in the construction of a building on other of Cotton's land. It was natural that Carleton should inquire of the vendor, Thornton, as to Cotton's title, and that he should have been informed by Thornton of the existence of the mortgage given to secure the purchase price of the land. So, also, it was natural, and demanded by honesty and fair dealing, that the mortgagor, Cotton, should disclose to Carr the true state of his title and of the incumbrance of the unpaid Thornton mortgage. Had Cotton not been prompted by such just motives, his warranty of title in his Carleton mortgage, implied by law from the use of the statutory words "grant, bargain, sell and convey" (Blakeslee v. Mobile L. I. Co., 57 Ala. 205; Higman v. Humes, 127 Ala. 404, 30 South. 733; Sayre v. Sheffield L. I. &. Coal Co., 106 Ala. 440, 18 South. 101; Chapman v. Abrahams, 61 Ala. 108; 2 Dev. on Deeds, § 946), and the provision therein for declaring the whole debt due, if the mortgagor should "in any manner dispose of the property," etc., demanded a truthful disclosure to the junior. mortgagee (J. A. Carr) of the existence of the first mortgage on the property.

[1] After consideration of all the evidence, we are of opinion that Carleton was so informed of this prior mortgage before and at the time of his taking the second mortgage in question. The recordation by Thornton of his mortgage of January 19, 1909, thereafter gave statutory notice to all parties in interest dealing with the land of the existence of the Thornton mortgage and that it was not satisfied of record. Veitch v. Woodward Iron Co., 76 South. 124;[2] Sulzby v. Palmer, 196 Ala. 645, 651, 70 South. 1; Code 1907, § 3374.

[2] Aside from the question of notice of the prior mortgage to respondents' ancestor and of knowledge thereof by the immediate grantor (conceding, without deciding, that there was a valid assignment or transfer of the Cotton-Carleton debt and mortgage to Carr), respondents have failed to offer the mortgage from Cotton and wife to Carleton, or the transfer· and assignment thereof by Carleton to J. A. Carr. They have failed to

[1] 200 Ala. 511.

[2] 200 Ala.· 538.

prove that it is not in their possession, or either of them, as to authorize the admission of secondary evidence thereof. Crabtree v. Street, 79 South. 192.[3] As a witness in his own behalf, N. S. Carr testified that there was such a mortgage and that it was transferred by Carleton to his father. However, of its then whereabouts he said: "That original mortgage may be among our papers, but I am not sure." Being recalled for further direct examination as to the loss of these necessary documents, in response to the question, "Have you in your possession, or has Mrs. J. A. Carr or Miss M. C. Carr, the original mortgage made by H. F. Cotton and wife to W. B. Carleton, and transferred to J. A. Carr by W. B. Carleton?" the witness replied:

"No, sir; I have not. I have looked among my papers since my former testimony in this case, and that mortgage is not among my papers nor among the papers of Mrs J. A. Carr nor Miss M. C. Carr."

It is not clear or evident that, though the mortgage in question may not have been among the papers of witness or among those of his mother or sister, it was not in the possession or control of one of said respondents. We do not by this mean to imply that there is anything in the record to show that the respondents were withholding the mortgage or the transfer thereof, but only that the predicate laid was insufficient to establish its loss, destruction, etc., as to permit the introduction of a certified copy thereof from the records in the office of the judge of probate. Without this evidence, respondents' title would fail even though the evidence had not shown the knowledge or notice of Thornton's mortgage by W. B. Carleton or J. A. Carr.

[3, 4] The fact that there was an adverse decision to Thornton in the one ejectment suit did not give absolute title to the Carrs, since the statute requires two such judgments in ejectment to bar such suit. Code 1907, § 3858; Southern R. R. Co. v. Cowan, 129 Ala. 577, 586, 29 South. 985; Pritchard v. Fowler, 171 Ala. 662, 667, 55 South. 147; Williamson v. Mayer Bros., 117 Ala. 253, 23 South. 3. Respondents, being called upon to propound their claim and failing to show title, should not recover. Code 1907, § 5444; Pace v. Robertson Banking Co., 80 South. 425;[4] Dennis v. McEntire, 187 Ala. 314, 65 South. 774; Kegley v. Rosser, 197 Ala. 109, 72 South. 381. Respondents are not relieved of their difficulty in failing to show title by the fact that T. S. Ruffin on July 2, 1910, undertook to convey the land to J. A. Carr, in the absence of evidence that Ruffin owned the land. That is to say, to show a conveyance thereof by Carleton and by Cotton. So far as the evidence discloses, the mortgage title from Cotton to Carleton remains in such mortgagee, subject to the mortgage of Cotton and wife to Thornton. Respondents have failed to connect themselves with the legal and equitable title to the land, or to show their legal or equitable right or claim thereto.

[5] As construed by our courts, the statute (Code, § 5443) is held to mean that one in peaceable possession under a claim of ownership, as distinguished from possession which is disputed, is within the statute authorizing one in peaceable possession, actual or constructive, to sue to quiet title; and the fact that the right to the possession is disputed does not defeat the right to sue; but where the possession, as distinguished from the right of possession, is disputed, the suit will not lie under the statute. Central of Ga. R. R. Co. v. Rouse, 176 Ala. 138, 57 South. 706, and authorities cited; White v. Cotner, 170 Ala. 324, 54 South. 114; Sayers v. Tallassee Falls Mfg. Co., 167 Ala. 553, 52 South. 892; Kinney v. Steiner Bros., 167 Ala. 494, 52 South. 593; Vandegrift v. Sou. Min. Land Co., 166 Ala. 312, 51 South. 983; Wood Lbr. Co. v. Williams, 157 Ala. 73, 47 South. 202; Crabtree v. Alabama Land Co., 155 Ala. 513, 46 South. 450; Rosebrook v. Baker, 151 Ala. 180, 44 South. 198; Johnson v. Johnson, 147 Ala. 543, 41 South. 522; Foy v. Barr, 145 Ala. 244, 39 South. 578; Randle v. Daughdrill, 142 Ala. 490, 39 South. 162; Lyon v. Arndt, 142 Ala. 486, 38 South. 242; Cooper v. Cooper, 201 Ala. 477, 78 South. 383.

[6, 7] Complainants, showing title to the land, were in the constructive possession thereof, and, in connection with Moore's statement that they have had possession of the land since its purchase at Thornton's foreclosure, was sufficient to shift the burden to respondents to show an actual possession, defeating complainants' right to maintain the statutory bill. Sou. Ry. Co. v. Hall, 145 Ala. 224, 41 South. 135; Gill v. More, supra; Franklin v. Snow, 195 Ala. 569, 571, 71 South. 93; Welch v. Smith, 80 South. 375, 376;[5] Smith v. Gordon, 136 Ala. 495, 498, 499, 34 South. 838; Dennis v. McEntire Lumber Co., supra, 187 Ala. 317, 65 South. 774. That is to say, there was proof warranting the reasonable conclusion that after the foreclosure of Thornton's mortgage on January 23, 1917, complainants immediately went into actual possession of the land and remained in the peaceable possession thereof to the time the bill was filed and the taking of the testimony in said cause. The former possession of respondents' ancestor or respondents before the bill was filed and their claim of ownership to the land did not change the character of complainants' peaceable possession taken and maintained immediately preceding and at the time the bill was filed, nor does such former possession or claim of ownership shown by respondents make the possession of complainants "a scrambling possession." Dennis v. McEntire Lbr. Co., supra; Jordan v. McClure Lumber Co., 170

Ala. 289, 54 South. 415; Sou. Ry. Co. v. Hall, supra.

The "forcible entry case in the circuit court of Macon County" was in the nature of an admission by 'Mrs. J. A. Carr, Miss M. C. Carr, and Nash (S.) Carr that the plaintiffs therein were not in possession of the land, but that the defendant in that suit had the possession. It is immaterial whether the case was decided on the fact that no written demand for possession had been made on the defendant; the fact remains that the bringing of forcible entry and detainer was in the nature of an admission that the actual possession was held by the defendant tenant. The testimony shows that this tenant was a tenant of the Moores and as such, being in possession of the land, held that possession for his landlord. A consideration of all the evidence sufficiently shows that the Moores went into possession of the land after the foreclosure of Thornton's mortgage, and had been in the continued peaceable possession since that time.

Respondents may not defeat this suit on the insistence that C. L. Moore, one of the complainants, was the tenant of N. S. Carr. Mrs. Benton, as executrix of the estate of which one of the Moores was executor, made a rental contract with N. S. Carr for the land for the year of 1916, and a tenant Shearer occupied the same, and at the end of that time abandoned that tenancy. The evidence shows that C. L. Moore was not present and had nothing to do with such tenancy. Of this, Mrs. Benton says:

"I made the contract myself. Claude Moore (C. L. Moore) was not there, and he turned the business over to me, and I rented it myself."

True, she testified that the tenant was one of the tenants of the estate. The testimony of Moore on this point was: That he heard the testimony of N. S. Carr as to the tenancy. That he never saw or heard of the copy of the paper purporting to be such rental contract until it was introduced in evidence on this trial. That the original thereof was not among the papers of the estate of which he and Mrs. Benton were the personal representatives. That witness Moore was not a party to such contract. That "this land was rented by Mrs. Benton before I knew anything about it, and had paid for it with her check, and against my wishes. Mrs. Benton is my aunt. She was the executrix of my grandfather's estate, and I was the executor of my grandfather's estate. And I as executor nor individually had anything to do with renting it for that year—in 1916 a negro named Shearer worked this land in 1916, to the best of my judgment he got through working and abandoned this land about November 1, 1916, and to the best of my judgment it was about three months before I took possession of it after he abandoned it." That

his tenant in 1917 was Sam Simpson, the party against whom the Carrs unsuccessfully sought to maintain forcible entry and unlawful detainer in the circuit court of Macon county. The facts as to this rental contract do not bring the instant case within the purview of Edwards v. L. & N. R. R. Co., 80 South. 847,[6] where the wife was denied the right to hold the possession of lands by a hostile claim to the tenancy under which the husband obtained the possession and made it his domicile and brought thereto the wife, who sought to hold possession after his death under her antagonistic claim of ownership.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.