(122 So. 811)

**OWENS v. BETTS et al.** (8 Div. 7.)

Supreme Court of Alabama. Nov. 1, 1928.

Rehearing Granted · May 30, 1929. Rehearing Denied June 20, 1929.

R. E. Spragins and S. H. Richardson, both of Huntsville, for appellant.

David A. Grayson, of Huntsville, for appellees.

[2] 218 Ala. 332.

BROWN, J. This bill was filed by appellant on February 4, 1927, under the statute, alleging that the complainant was in the peaceable possession of the property described in the bill, claiming to own the same in her own right, and that the defendants deny or dispute complainant's title, and claim title to said property or an interest therein, and that no suit is pending to test the validity of such title, claim, or incumbrance, and calling on the defendants to set forth and specify what title, claim, or interest they have in said property, and how and by what instrument the same was derived or created, and praying that complainant's title be quieted, and for general relief.

The defendants answered, denying in general terms the averments of paragraph 2 of the bill, alleging that complainant was in peaceable possession of the property; and in a cross-bill following the answer, alleged that the defendant Amelia Moseley, who is also known as Mealey Moseley, was married to Jack Moseley during the Civil War; that they lived together as husband and wife from the time of the marriage until a few months of the time when Jack Moseley entered into a pretended or bigamous marriage with Sallie Robinson, afterwards known as Sallie Moseley; that the other defendant, Lizzie Moseley Betts was born to the said Jack Moseley and Amelia Moore prior to the year 1868; that said Jack Moseley recognized the said Lizzie Moseley Betts as his daughter; that Jack Moseley was the owner of the property in question, and the defendants as the wife and daughter of said Jack Moseley are owners of the property; that the said Ozzie Owens, the complainant, has taken charge of the personal property of the said Jack Moseley and has either disposed of it by selling it or has it in her possession.

The cross-bill prays that any claim which the said Ozzie Owens may make to said property be adjudicated and decreed to be unfounded, and that cross-complainants own said property, "and that the Court place the cross-complainants in possession thereof; that the Court will issue all proper writs necessary to dispossess the said Ozzie Owens; that the said Ozzie Owens be required to file an inventory of all the personal property that she found in the building, whether said property is deemed to belong to the said Jack Moseley or the said Sallie Robinson," etc.

The complainant answered the cross-bill denying the alleged marriage between Amelia Moore and Jack Moseley and that Lizzie was the daughter and heir of Jack Moseley.

On final submission on pleadings and proof, the circuit court denied relief to complainant, but granted relief to the respondents and ordered complainant to deliver possession of the premises to them, and upon her failure to do so that writ of possession issue to this end. That decree is the basis of this appeal.

Brief for appellees states that: "The undisputed facts in the case are as follows: at the time of the filing of the bill of complaint, the complainant was in the actual occupancy * * * of the land or lot described in the bill of complaint; that she was the niece and only heir at law of Sallie Moseley who died shortly before the bill of complaint was filed, and who, at the time of her death, was in actual occupancy of the lot described in the bill of complaint, and had been occupying * * * said lot continuously from the date of the death of Jack Moseley in 1913, up until the death of Sallie Moseley on the 17th day of January, 1927, partially keeping up repairs on the property * * * and paying taxes on it during the entire period. * * * Ozzie Owens was not in possession of the property peaceably or otherwise except as a trespasser." We take these statements as an admission that the complainant was in the actual possession of the property at the time the bill was filed, qualified by the assertion that in taking possession she was a trespasser, and we limit our consideration, so far as this phase of the case is concerned, to this assertion.

The evidence shows, without dispute, that the property in question belonged to Jack Moseley, a freedman, who occupied it with Sallie Moseley as his wife, up until the time of his death in 1913; that Sallie continued to occupy it as his widow, made needed repairs thereon, and assessed and paid the taxes up until her death on the 17th day of January, 1927. After the death of Sallie, complainant went into possession, claiming as Sallie's heir, and placed a sign on the property offering it for sale. The defendants were not then in possession of the property and had never been, and no one else had assumed possession of the property after the death of Sallie Moseley, until the complainant went into possession. Under these circumstances, it is clear that complainant in taking possession as the heir of Sallie Moseley violated the possession of no person, and therefore it cannot be affirmed that she was a trespasser.

The complainant's actual occupancy of the property being conceded, and being rightful in its inception, it is such actual possession as authorizes the adverse claimant to sue and test the title, and will sustain a bill to quiet title. Buchmann Abstract & Investment Co. v. Roberts, 213 Ala. 520, 105 So. 675.

606

And the fact that respondents disputed complainant's right to possession is not sufficient to make it a scrambling possession. Central of Georgia R. Co. v. Rouse, 176 Ala. 138, 57 So. 706; Buchmann Abstract & Investment Co. v. Roberts, supra; Carr et al. v. Moore et al., 203 Ala. 223, 82 So. 473.

Another contention made by appellees is that complainant failed to sustain the averments of the bill that no suit was pending wherein the respective claims of the parties could be tested. The defendant Lizzie Pope (Betts) testified: "The funeral took place on Sunday and I went to the funeral. Then in a day or two, on Tuesday I think it was, William Fletcher came and told me that Ozzie had a sign up that the place was for sale, so I went down there to see about it. Ozzie and Mrs. Robinson were in the room when I walked in and I said, Ozzie you can't sell this place, it belongs to me, and she said I have already been to see my lawyer, now you go and see yours, and I came right up and told my lawyer and instructed him to bring suit and before he brought suit Ozzie brought suit." This we think clearly shows that no suit was pending between the parties, and is sufficient to sustain the bill in this respect.

Therefore, complainant was entitled to relief unless the defendants have shown that they have the legal title to the property. Kendrick v. Colyar, 143 Ala. 597, 42 So. 110; Whittaker v. Van Hoose et al., 157 Ala. 286, 47 So. 741.

Appellees' further contention is that Jack Moseley and Amelia Moore entered into a slave marriage after the proclamation of emancipation and prior to the ordinance of 1865, legitimatizing the children born of such marriage; that the respondent Lizzie Pope, or Betts, was born of this marriage about the year 1868, and is therefore the heir of Jack Moseley, and the legal title to the property, in the absence of a proceeding to set it aside as exempt under the exemption statutes, passed by the process of devolution to Lizzie, subject to the right of Amelia as the widow of Jack Moseley.

This presents a question of fact on which the evidence is in irreconcilable conflict, with the burden of proof resting upon the respondents. This because the evidence is without dispute that Jack Moseley entered into a ceremonial marriage with Sallie Robinson on the 18th day of February, 1872, and that they lived together continuously as husband and wife until Jack's death in 1913, a period of 41 years. Moore v. Heineke, 119 Ala. 627, 24 So. 374; McLaughlin v. McLaughlin, 201 Ala. 482, 78 So. 388; Bell v. Bell, 196 Ala. 465, 71 So. 465.

The defendant Amelia Moore testified that before the war ended she was married to Jack Moseley by a negro preacher, "Parson Blankinship"; that she was then living on the Billy Moore place near Huntsville in the servants' quarters; that she did not know what year it was, but it was during the Civil War; that she and Jack lived together for several years, but how long she did not know; that about a year and a half after Jack left her she heard he had married Sallie; that she had three children by Jack, two of whom died; that Lizzie was the other and the eldest of the three; that Jack spent the nights with her for several years, and after Jack left her she assumed her own name; that Lizzie was born at the Moore place before the war ended. Lizzie testified that she did not know her age, but that she was 29 years of age when she married, and her first child, who was 25 years of age at the time she testified, in 1927, was born about a year after her marriage. This, if correct, shows that she was born in 1872. The defendants offered other evidence tending to corroborate their theory.

The evidence to the contrary shows that Jack Moseley and Sallie lived together as husband and wife as early as 1865, and had an established habitation; that they had one daughter Fannie, who was born in 1868, and a certified copy of the original Federal Census returns for the year 1870 shows that the family of Jack Moseley consisted of himself, Sallie, and Fannie, who was then two years old, while a like return shows that Mealey Moore, then 23 years of age, was living as a member of the family of Davy Richmond, and so far as appears had no children, at least none are listed.

It further appears without dispute that Jack Moseley and Sallie lived together as husband and wife in the same community with Mealey Moore for more than 40 years, up until the time of Moseley's death in 1913, and their relations were in no way disturbed or questioned by the respondents, or either of them, and that Sallie continued to occupy the property in question from 1913 up until her death in 1927, and during all this time the respondents asserted no claim or right to the property in question.

In these circumstances we are of opinion that the respondents have failed to meet and carry the burden of proof which they assumed by the averments of the cross-bill, and we are constrained to hold that they have no title, right, or interest in the property in question.

The decree of the circuit court is therefore reversed, and one will be rendered here adjudging that the respondents have no right, title, or interest in the property described in the bill, and as against them settling and quieting the title of the complainant.

Reversed and rendered.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.