210 So.2d 814

**Joseph O. WIGGINS et al.**

**v.**

**STAPLETON BAPTIST CHURCH.**

**1 Div. 361.**

Supreme Court of Alabama.

May 13, 1968.

C. LeNoir Thompson, Bay Minette, for appellants.

Chason, Stone & Chason, Bay Minette, for appellee.

COLEMAN, Justice.

Respondents, Joseph O. Wiggins and wife, Ethel M. Wiggins, appeal from a decree granting relief to complainant on a statutory bill to quiet title. Title 7, § 1109.

Complainant avers that it is a corporation, that it is in peaceable possession of a part of Lot Q in a recorded plat of the Town of Stapleton, that respondents claim some right to the lot, that no suit is pending to test the validity of such title, and calls upon respondents to specify their title.

Respondents answered that they acquired the lot by a warranty deed from E. C. Wiggins and his wife, Annie Mae Wiggins, dated February 17, 1956, which was filed for record in the office of the Judge of Probate on February 18, 1956.

Testimony was heard ore tenus. It was stipulated that the title of both parties came from the same source, namely Ernest Wiggins (also known as E. C. Wiggins or Earnest Wiggins) and his wife, Annie Mae Wiggins.

The boundary lines of Lot Q form a square 140 feet long on each side. Lot Q is treated as having been subdivided into three lots. One of the subdivided lots lies in the north half of Lot Q. The dimensions of this lot are 100 feet from east to west

and 70 feet from north to south and we will refer to it as the NE lot.

Another of the subdivided lots also lies in the north half of Lot Q and is 40 feet from east to west and 70 feet from north to south. We refer to it as the NW lot. The NW lot lies immediately west of and adjoins the NE lot. The purpose of the instant suit is to determine the title to the NW lot.

The third subdivided lot is the south half of Lot Q and will sometimes be referred to as the S lot.

There was testimony that complainant is "in possession" of the NW lot, had "cleared it," had "got a bulldozer and cleaned it off," and was "keeping it cleared." There is also uncontradicted testimony by a trustee of complainant that the clearing had been done "after this case was in court." Respondents do not question the sufficiency of this testimony to prove complainant's actual, peaceable possession at the time the bill was filed, and, therefore, we treat the testimony as sufficient to make out a prima facie case for complainant.

Complainant challenges the sufficiency of the assignments of error and we are inclined to agree that most of them are insufficient to invite review except No. 4 which recites:

"4. The Court erred in that said decree is contrary to the evidence."

Errors were assigned and the transcript filed prior to March 21, 1966.

■ There is only one decree, and it is a single unit, and, if erroneous in any respect, the error permeates the entire decree and an assignment in general terms is sufficient. Murphy v. Pickle, 264 Ala. 362, 365, 87 So.2d 844.

"  .   .   .   . The assignment of error is in terms very general, yet it conforms to the long practice in this court. Without surprise upon the profession, when the decree of the chancellor is assailed as erroneous in the whole, an assignment of error, in the general terms of this assignment, must be accepted as conforming to the rules of practice. We certainly do not feel at liberty to disregard it entirely. The case is distinguishable from that of Alexander v. Rea, 50 Ala. 450, in which it was claimed the decree of the chancellor was partially erroneous, that specific errors infected it, which ought to have been assigned with precision. The error assigned by the appellants asserts that the decree as an entirety is erroneous." Robinson v. Murphy, 69 Ala. 543, 546.

See: Burgin v. Sugg, 210 Ala. 142, 97 So. 216; Sayre v. Dickerson, 278 Ala. 477, 484, 179 So.2d 57; Bryan v. W. T. Smith Lumber Co., 278 Ala. 538, 542, 179 So.2d 287.

We will consider whether the decree is contrary to the evidence.

■ Under a statutory bill to quiet title, where it is shown that complainant is in peaceable possession of the land, either actual or constructive, at the time of the filing of the bill and that there was no suit pending to test the validity of the title, a prima facie case is made out, entitling the complainant to relief, and the burden is then upon respondent to establish his claim to the land. When the respondent shows legal title to the land, the burden of avoiding it by showing superior title by adverse possession (or by a better paper title) shifts to the complainant. In a proceeding under the statute, if the averments of the bill and answer conform to the requirements of the statute, the issues involve everything necessary to a determination by the court whether complainant or respondent has the superior title to the property, and it is proper for the court, under the issues thus found, to determine in which of the parties the title resides. Stewart v. Childress, 269 Ala. 87, 92, 111 So.2d 8; Webb v. King, 268 Ala. 282, 105 So.2d 653.

The evidence shows that respondents acquired title to the NW lot and also the S

lot from the common source by warranty deed dated February 17, 1956, signed and acknowledged by E. C. Wiggins and his wife, Annie Mae Wiggins, and filed for record in the office of the Judge of Probate on February 18, 1956.

Complainant contends that the conveyance of the NW lot to respondents was not intended, and that, prior to the deed to respondents, E. C. Wiggins and wife had conveyed the NW lot to James E. Wiggins in 1955 by a deed which has been lost. As stated in brief, complainant's "theory is that the deed for . . . . (the NW lot) . . . . which was lost and which was proven lost to the satisfaction of the trial court pre-dated the deed claimed by the Appellant which also covered the same land, together with other lands and on which rests their claim, and therefore *the proof of the lost deed connected with Appellee's exhibits two and three show a perfect chain of title from the stipulated common source to the Plaintiff-Appellee here.*" (Par. Added and Emp. Supplied.)

Complainant's claim of title thus rests on three instruments as follows:

1. The lost deed conveying the NW lot from Ernest Wiggins and wife to James E. Wiggins apparently dated sometime in 1955, which was never shown to be recorded.

2. Complainant's Exhibit 2, a warranty deed from James E. Wiggins and his wife, Virginia Wiggins, conveying the NE lot and the NW lot to George J. Burroughs and Bessie R. Burroughs; dated March 17, 1962, and filed for record March 20, 1962.

3. Complainant's Exhibit 3, an instrument whereby George J. Burroughs and his wife, Bessie R. Burroughs "do remise, release and forever quit-claim unto" Stapleton Baptist Church, a Corporation, the complainant, the NW lot; dated November 24, 1962, and filed for record November 26, 1962.

According to the rule in Stewart v. Childress, *supra*, after respondents had proved their title, the burden was on complainant to prove a better title. See Kegley v. Rosser, 197 Ala. 109, 110, 72 So. 381, where the parties claimed from a common source, complainant through a lost deed from respondents' deceased ancestor and respondents by inheritance, where this court approved the statement of the trial court that: " 'The complainant has assumed the burden of proving the execution of an alleged (lost) deed from Matt Rosser and his wife, Mentie Rosser, to H. Newton. . . . .' " (Par. Added) Newton had conveyed to complainant by a recorded deed.

We examine the evidence to ascertain whether the instant complainant has proved the lost deed from Ernest Wiggins to James E. Wiggins.

Ernest Wiggins testified that he once owned all of Lot Q; that, on September 9, 1953, he executed a deed conveying the NE lot to his son, James E. Wiggins, and wife, Virginia; that approximately two years later he executed and delivered a deed (which is the lost deed) conveying the NW lot to his son, James E. Wiggins; that he split Lot Q in half; that James went into possession; that the witness does not know whether the lost deed was ever recorded; that he later executed the deed dated February 17, 1956, conveying the NW lot and the S lot to respondents; that he showed Joseph Wiggins, one of the respondents, the dividing line, told him to split the lot in half "East and west," showed him where the dividing line would be, and afterwards executed the deed to respondents; that what respondents would have gotten was the south half of Lot Q; that witness found out "there was a mistake in it" and Joseph's wife would not correct it and the witness dropped it; that Sidney Chandler "notarized this deed." We have found nothing in the testimony of Ernest Wiggins to prove that he ever saw the lost

deed conveying the NW lot to James E. Wiggins after it was delivered or anything else in the testimony of Ernest Wiggins to lay a predicate which would justify the introduction of oral testimony to prove the contents of the lost deed.

James E. Wiggins testified that he and his wife executed complainant's Exhibit 2, the deed to Burroughs; that prior to execution of Exhibit 2, Ernest Wiggins had conveyed to the witness the NE lot and witness was living on the NE lot; that Ernest Wiggins, "may be a year after I received the first deed," executed and delivered to the witness a second deed; "After that," the witness went "in possession" of the NW lot; that the witness had a dog house on the NW lot and a clothes line, "you might say from one end to the other"; that witness regularly hung clothes on the clothes line and had dogs in the dog yard; that witness had a dog yard and clothes line on the NW lot on February 17, 1956; that witness executed to the bank a mortgage dated December 5, 1958, on the NE lot and the NW lot; that when witness sold to Burroughs, the witness just let Burroughs "take up the payments with the bank." On cross-examination the witness testified:

"Q. As a matter of fact, you made him a deed to it and he was to make a deed to the Church (w)asn't he?

"A. Mr. Burroughs—Well, that was handled through the Bank.

"Q. You don't how it was handled?

"A. That was drawn up from the others through the Bank.

"Q. So you didn't get any money—You just deeded it to him?

"A. Right."

James E. Wiggins testified that he did not know where the lost deed is and could not remember whether he had ever recorded it "in the Probate Office."

James R. Owen testified that he was a practicing attorney and familiar with the NW lot; that he had seen "a deed from Earnest Wiggins and his wife to James Wiggins conveying" the NW lot; that the witness had a conversation with respondent Ethel Wiggins; that on November 22, 1955, Ernest Wiggins and wife executed a deed to the NW lot to James E. Wiggins and Virginia Wiggins; that in February, 1956, respondents made application to the Savings & Loan Association describing all of Lot Q except the NE lot; that "we had an abstract made" or "continued" on all of Lot Q and the 1955 deed from Ernest to James had not been recorded and did not show up in the abstract; that witness made a deed from Ernest and wife to respondents in February, 1956, and closed that loan; a year later, "either Earnest or James Wiggins" came to witness about the NW lot; that Ethel Wiggins came to the witness' office with Annie Mae Wiggins, and Ethel told witness that she and her husband did not claim any part of the NW lot and would execute a quitclaim deed to James Wiggins and the Savings & Loan Association "was going to give a mortgage release on" the NW lot and witness prepared a quitclaim deed; that he does not have the original but does have a copy of that deed from respondents to James E. and Virginia Wiggins which was prepared in February of 1957 but, as far as witness knows, "was never executed and delivered"; that he has been unable to find the lost deed from Earnest to James Wiggins "indexed in the Probate Office" although he has looked six times; that he has seen the lost deed because he has referred to it in two different letters he has; that he thought he "might have made that deed," but came to the conclusion that he did not because he "can't find a copy of it"; that he "made" the deed from Ernest and wife to respondents dated February 17, 1956; that the lost deed dated November 22, 1955, was not shown in the abstract which witness examined.

We find no other evidence which would lay a predicate for introduction of second-

**260**

ary evidence to prove the contents of the lost deed.

■■ In order to prove a deed, agreement, or other private instrument, it is necessary, first, to produce the deed, or to excuse the omission by proof that it has been lost or destroyed, or is in the hands of the adverse party who has had notice to produce it. For the best evidence of the contents of a written instrument consists in the actual production of it, and secondary evidence of it cannot be admitted until the impossibility of producing it has been manifested to the court. Mitchell v. Mitchell, 3 Stew. & Por. 81.

" . . . . Search is not enough. There must be diligent search at every place the paper would be likely to be found.—1 Greenl. Ev. § 558; Mitchell v. Mitchell, 3 Stew. & Por. 81; 1 Brick. Dig. §§ 632, 633. . . . ." Singer Manufacturing Co. v. Riley, 80 Ala. 314, 316.

■ To justify admission of secondary evidence of the contents of a lost deed, especially when exclusively oral, the following facts must be established to the satisfaction of the court: (1) the existence and execution of the original paper, as a genuine document; (2) the substance of its contents; (3) its loss, destruction, absence from the State, or other satisfactory reason for failure to produce the original, which may be shown by such diligent search for it as would raise a reasonable presumption of such loss or absence. The one of these facts is as necessary to be proved as the other, and the failure, therefore, to prove either is fatal to the right to introduce the secondary evidence. Potts v. Coleman, 86 Ala. 94, 101, 5 So. 780.

See Carr v. Moore, 203 Ala. 223, 224, 82 So. 473, [2]; Lynn v. Kelly, 204 Ala. 206, 85 So. 394.

In Avery v. Stewart, 134 N.C. 287, 289, 290, 46 S.E. 519, the court reversed for ad-

mitting secondary evidence of the contents of a lost letter where the predicate was merely: " 'I received a letter from Humphrey, which is lost. I cannot find it.' " The court quoted 1 Greenleaf Ev., sec. 558 (16 Ed., sec. 563b), as follows:

" 'If the instrument is lost, the party is required to give some evidence that such a paper once existed, though slight evidence is sufficient for this purpose, and that a *bona fide* and diligent search has been unsuccessfully made for it in the place where it was most likely to be found, if the nature of the case admits such proof. What degree of diligence in the search is necessary it is not easy to define, as each case depends much on its peculiar circumstances; and the question whether the loss of the instrument is sufficiently proved to admit secondary evidence of its contents is to be determined by the court and not by the jury. But it seems that, in general the party is expected to show that he has in good faith exhausted, in a reasonable degree, all the sources of information and means of discovery which the nature of the case would naturally suggest and which were accessible to him.' "

In Harven v. Hunter, 30 N.C. 464, the court reversed for admitting secondary evidence of deeds where predicate was merely that the witness did not know where they were and he had made "due enquiry" for them and was unable to procure them.

In Anglo-American Packing & Provision Co. v. Cannon, C.C., 31 F. 313, the court held secondary evidence of telegrams inadmissible where predicate was that originals were 'lost or destroyed."

In Booth v. Cook, 20 Ill. 129, when affiant testified that he had never seen the lost deed, had never had possession thereof, and had no knowledge of its whereabouts, the court reversed for admitting secondary evidence, saying that there is nothing unreasonable in requiring the party to make faithful efforts to produce the orig-

inal, and that the "very rule which will subject an honest man to inconvenience to-day may be his security to-morrow."

In the case at bar, James E. Wiggins, grantee in the lost deed, and person to whom his father delivered it, would seem to be the person most likely to have it. James E. Wiggins does not testify that he made any search whatever for the deed. He says merely that he does not know where it is.

Owen did not say that he ever had possession or custody of the deed. He does not have a copy of it and concludes that he did not write it. His testimony is merely that he saw it once, the circumstances not being shown. He searched the indices in the office of the Judge of Probate, but no witness testified that the deed had ever been in that office, and the evidence strongly points to the conclusion that the deed was never there.

■ There is no evidence whatever that any search was made at any place where the evidence shows that the deed was likely to be found. In the absence of a diligent search, secondary evidence of the contents of the deed was not admissible.

Complainant argues that the inquiry into the existence of the lost deed is a preliminary question addressed to the sound discretion of the trial court whose decision will not be disturbed except for error of law or if the evidence is insufficient as a matter of law, citing the two cases next discussed. In J. R. Watkins Co. v. Goggans, 242 Ala. 222, 5 So.2d 472, this court thought it not necessary to set out the evidence concerning loss of the original document and held the predicate sufficient to admit secondary evidence. In Agee v. Messer-Moore Ins. & Real Estate Co., 165 Ala. 291, 51 So. 829, this court affirmed the trial court's ruling admitting secondary evidence of the contents of a diagram, al-though the details of the search for original were not shown. This court said that the strictness of the proof of search varies in accordance with the importance and value of the document. If it be of little value, and there be no ground for suspicion that it is designedly held, very strict proof is not required. The court said that "the document was of no intrinsic value" and very slight evidence would suffice in such a case. By contrast, the lost deed in the instant case is vital to prove complainant's title and slight evidence is not sufficient.

In the instant case, complainant failed to lay a sufficient predicate for introduction of secondary evidence to prove the contents of the lost deed and the trial court was not authorized to consider parol evidence to prove the contents of the lost deed and neither are we. Act No. 101, General Acts 1943; shown in 1958 Recompilation of Code of Alabama as § 372(1), Title 7; McIntyre v. Coker, 274 Ala. 457, 150 So.2d 220; Barry v. Thomas, 273 Ala. 527, 142 So.2d 918.

■ On consideration of the competent and legal evidence, we are of opinion that respondents proved the superior title and that the decree for complainant is contrary to the evidence.

We have not considered the effect of § 120, Title 47, Code 1940, nor the sufficiency of the evidence to prove the execution or contents of the lost deed.

The decree is reversed and the cause is remanded.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON, SIMPSON, MERRILL and HARWOOD, JJ., concur.