This is an appeal from a judgment in an action for an accounting. The plaintiff, L.D. Upton, and the defendant, Roger Cupps, formed a partnership to conduct a coal mining operation. After the mining was completed, the parties could not agree on the amounts due each partner. The trial court held that Cupps owed Upton $51,000.
The facts of the case are sharply in dispute. The parties kept very informal records. There was no written partnership agreement. Cupps carried most of the records of the business in his briefcase. Cupps and Upton both concede that they agreed to divide the profits evenly.
In December 1980, Upton was operating a strip mine which he had been operating more than a year. Cupps approached him and offered to form a partnership to mine the remainder of the coal in the seam before the coal miners went on strike upon the expiration of their contract the following March. Upton did not have the money to mine the remaining coal. He had removed 90 to 92 feet of overburden and some coal.
The coal operations were quite successful. Sales from the latter part of December through the middle of March 1981 totalled approximately $784,000. Upton introduced *Page 545 
evidence that expenses totalled approximately $562,000, and that, thus, each party should have made approximately $110,000. The testimony was sharply disputed as to each partner's contributions, advances, expenses paid, and items to be credited or debited to their accounts. In these circumstances, the presumption of correctness in favor of a trial court's judgment based on ore tenus evidence is especially strong.
On March 20, 1981, Cupps came to Upton's house to discuss their dispute over the profits. Cupps showed Upton an adding machine tape purporting to show the money Upton was due. Upton disagreed. The next day, Cupps brought his records, which he carried in his briefcase, and dumped them on Upton's table. Upton and his wife attempted to understand these records. When they could not, they hired an accountant to compile financial statements. The accountant's compilation was the source of the figures quoted above, although the accountant reserved any opinion because the compilation was based on "information that is the representation of management" which had not been audited.
Upton filed this action for an accounting in July 1983. Cupps filed a motion to dismiss and later an answer. Discovery commenced, and Cupps alleges that he filed requests for production on July 23 and August 24, 1984. These are not included in the record before us, but the circuit clerk's "Index of Documents and Exhibits Omitted from the Clerk's Record" (see Rule 10 (a), A.R.A.P.) lists two requests for production directed to plaintiff. The record does not reflect that Cupps filed a motion asking the court to compel production of these documents. Nevertheless, Cupps raises the failure of the court to compel production as his first issue.
Nothing regarding the pre-trial requests for production is preserved for appeal because Cupps did not undertake to supplement the record on appeal to include either the requests or any ruling of the court in relation thereto. See Rule 10, A.R.A.P. "[I]t is the obligation of the appellant to see that the record on appeal contains evidence sufficient to warrant reversal." Trimble v. City of Prichard, 438 So.2d 745, 747
(Ala. 1983); Wright v. Waters, 367 So.2d 960 (Ala. 1979); see also Ex parte Edwards, 450 So.2d 464 (Ala. 1984).
At the close of Upton's evidence during trial, Cupps made an oral request for production of Upton's 1980 bank account records for his two companies, Sumiton Mining, Ltd., and Wolf Creek Mining Company, through which accounts some of the partnership business passed. Cupps also requested Upton's records of coal shipped from the site in 1980. Cupps alleges that these records were the subjects of his requests for production prior to trial.
The trial court overruled Cupps's oral request for production. The record does not disclose, however, that the trial court committed any reversible error in denying the request. Cupps argued that the requested documents were admissible to impeach Upton's testimony that he injected money into the partnership from sales of coal he had mined prior to the formation of the partnership. The trial court responded by stating that Upton had admitted that he did not have any money at the time he and Cupps formed the partnership, and that Upton would be bound by that statement as an admission that he did not inject any money into the partnership. Cupps's attorney did not pursue the request further. The exchange is as follows:
 "THE COURT: I'm going to deny your motion at this time, or, — you haven't finished?
"MR. E. JACKSON: No sir.
 "THE COURT: Let me remind you that he said his testimony is that he had mined 90 to 92 feet. `I had run out of cash. I had 3,000 tons of coal on the ground.' Mr. Cupps said, `I will put up the money. We will take the expenses out of it and split the profits.' Now, your testimony may be completely different from that. But I deny your motion to go into his other two companies before they entered into this. *Page 546 
 "MR. E. JACKSON: Judge, how can we, just as a point of interest, how can we be expected to show whether or not he got the money that he claims that we owe him without looking at his bank statements and reconcile them before and after?
"THE COURT: I must not be following you.
 "MR. E. JACKSON: There is — I think he was broke before the date they went in.
"THE COURT: He said he was.
 "MR. E. JACKSON: In terms of cash flow, but he had money owed him, he says, for coal sold previously.
 "THE COURT: Before he went into the agreement with Mr. Cupps.
 "MR. E. JACKSON: Right. Now, if he got paid for that, it furnishes a basis for him to make the claim that he was able to pay the debts through the third week in January.
 "THE COURT: No, no. He's going to have to live with that. That's his testimony. `I didn't have no money,' he says. So, he couldn't pay no debts if he didn't have any money. He said, `I didn't have any money.'
 "MR. E. JACKSON: If that's the way the Court understands it. That's what I understood, too.
 "THE COURT: He can't say that he put money into this venture if he didn't have any, and that's his testimony. He may have some explanation of that, but I deny the motion. Now please, don't let me mislead you. He may have an explanation and you may be correct.
 "MR. E. JACKSON: Well, if he's rested, their case in chief is over. It would not be rebuttal for him to get up here now and say he had some money. It would just be changing his case in chief, as I understand it. That issue is settled with regard to whether he had any money to put into the enterprise to pay those debts or not, as I see it.
 "THE COURT: I think he's stuck with his testimony at this point."
Cupps proceeded with his case with no further demand for the production of these bank records. Upton's bank records of his business prior to formation of the partnership were peripheral, if not irrelevant, to the accounting of the partnership. In the exchange set out above, Cupps essentially withdrew his request for production after the trial court agreed that Upton would be held to his statements that he did not have any money at the outset of the partnership. Cupps did not supplement the record to include the omitted pre-trial requests for production. In light of these circumstances, we cannot say that this issue presents a ground on which the judgment of the trial court is due to be reversed. See Rule 37, A.R.Civ.P.
Cupps next argues that the trial court erred in allowing Upton to testify about the transactions of the partnership over Cupps's objections that the testimony violated the best evidence rule. The best evidence rule applies when a party wishes to prove the contents of a writing, and it requires that the original be produced if available. Wiggins v. StapletonBaptist Church, 282 Ala. 255, 210 So.2d 814 (1968). The questions propounded to Upton asked for information within his own personal knowledge. The trial court committed no error in overruling the objections. Lipscomb v. Tucker, 294 Ala. 246,314 So.2d 840 (1975).
Cupps next raises a series of issues which reduce to the question of whether there was sufficient evidence to support the trial court's judgment. The accounts were sufficiently in dispute to justify an accounting. Kirksey Motors, Inc. v.General Acceptance Corp., 276 Ala. 270, 161 So.2d 475 (1964). Upton produced detailed accounts from which his accountant determined that he had contributed $42,602.66 capital, was due $111,206.59 income, and had drawn $73,563.07 on his account. Adding the capital and income figures and subtracting withdrawals results in a net due to Upton of $80,246.18. *Page 547 
Cupps submitted his own accounts, from which he argues that Upton owes him $1,086.79. During trial, Cupps disputed the accuracy of many of Upton's figures. Presumably, the trial court believed Upton's accounts were substantially accurate but, under its ruling that it would not consider amounts Upton claimed to have paid into the partnership, did not consider $29,758.16 shown as a loan payble to Sumiton Mining in awarding Upton $51,000.00. The evidence was sharply in dispute. Where the trial court bases its findings on evidence presented ore tenus, its findings are entitled to a presumption of correctness and will not be disturbed on appeal unless plainly and palpably wrong or manifestly unjust. Thompson v. HartfordAcc. Indem. Co., 460 So.2d 1264 (Ala. 1984); Seier v. Peek,456 So.2d 1079 (Ala. 1984); Skinner v. Florence, 439 So.2d 118
(Ala. 1983). Upton's accounts and testimony are sufficiently credible for us to conclude that Cupps has not overcome the presumption in favor of the trial court's judgment. BurgessMin. Const. Corp. v. Lees, 440 So.2d 321 (Ala. 1983). The judgment is due to be, and it is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, BEATTY and HOUSTON, JJ., concur.