267 So.2d 410

Nell McCARY

v.

Geneva TREADWAY et al.

6 Div. 950.

Supreme Court of Alabama.

Sept. 14, 1972.

Rehearing Denied Oct. 26, 1972.

Hugh A. Locke, Jr., Birmingham, for appellant.

J. Mason Davis, Birmingham, for appellees.

HARWOOD, Justice.

On the 14th day of October 1935, a lease sale contract was entered into by the Nabers Land Company and Geneva Treadway involving a lot in the company's survey of College Park, a subdivision, a map of which

was of record in Jefferson County. The contract appears in a pass book printed by the company which contained, in addition to the printed terms of the agreement, blank spaces which were filled in to show the description of the lot, the sales price which was $400.00, the terms of payment which was $.50 per week for 800 weeks and the down payment which was $5.00. This in itself was an inconsistency as 800 weeks at $.50 per week, plus a down payment of $5.00 would equal $405.00 rather than $400.00, the stated sales price. The pass book contained a number of blank pages for the entry of payments. The significant terms of the lease sale contract are as follows:

"It is further understood and agreed that if the Party of the Second Part fails to pay the taxes and special assessments against said lot payable by him hereunder when the same become due and payable, or fails to pay the weekly rent as it becomes due and becomes more than four (4) weeks delinquent (except in case of sickness as hereinbefore provided), or fails to comply with or violates any condition or requirement herein, then on happening of any such event the Party of the Second Part shall, at the option of the Party of the First Part, forfeit his rights to a conveyance of said lot, and all money paid by the Party of the Second Part under this contract shall be taken and retained by the Party of the First Part as payment of rent for said lot; and the failure of the Party of the Second Part to comply with any of the conditions of this contract shall, at the option of the Party of the First Part make the Party of the Second Part only a lessee under this contract, without any rights whatever except the rights of a lessee, without any action or notice upon the part of the Party of the First Part; and failure or delay on the part of the Party of the First Part to exercise its option to deprive the Party of the Second Part of the right to a conveyance of said lot or of rights as lessee hereunder as herein provided at the time of the noncompliance with the terms of this contract or the violation thereof by the Part of the Second Part, shall not be nor operate as a waiver of the right to exercise such option at any time thereafter."

The pass book which was introduced in evidence shows payments in uneven amounts and at irregular dates from the date of the contract through May 19, 1952, in the total sum of $336.50. Proof was offered of three other payments made to C. E. Brooks, an apparent agent of the land company in June, August, and December of 1952, which payments were by Western Union Telegraph remittance and a bank money order from a bank in Ohio. These payments totaled $73.00, making total payments of $409.50. The last $20.00 payment was enclosed in a letter written by Geneva Treadway from Steubenville, Ohio, dated December 28th, 1952, and addressed to J. H. Berry Realty Company in Birmingham, Alabama, which is as follows:

"Dear Mr. Brooks:

"Find enclosed Cash Money Order for the sum of $20.00. To close the last payment on property. Lot 4–Blk 4–3 Add.

"Mr. Brooks, when you send me the Warranty Deed for this property, please sir send it by Register Mail.

"Thanking you in advance for your kind consideration and your leanesee (sic) in this matter.

"I have all of my receipts and payment book, which I used to keep up with the amount I owed. Thank you again.

"Sincerely yours,

"Geneva Treadway"

No deed was forthcoming and so far as the record shows the next step taken by the purchaser, who some years back had moved to Ohio, appears from the following letter which, it will be noted, is dated December 30, 1954, addressed to J. H. Berry Realty

Co., Birmingham, Alabama, attention Mr. C. E. Brooks:

"I am writing to you concerning my lot—Lot 4, Blk 4–3 Add. I sent you the money to complete my payments last year but to date I have not received my Deed.

"Now I am sending you the taxes—six ($6.00) dollars if I owe any more, please let me know at once.

"I am looking forward to hearing from you at once, thanking you in advance for your cooperation.

"Yours very truly,

"Geneva Treadway"

So far as appears, no reply was made to this letter.

We now proceed to connect the appellant to the preceding transactions. The vice president of the Nabers Land Company was William McCary, the husband of the appellant. He died in the year 1953. There was litigation concerning his will, as well as prior litigation concerning the assets of the Corporation. The exact nature of which does not appear in the record but it does show that in 1953 or 1954, the appellant became the owner of a number of lots and lease sale contracts in the College Park subdivision, including the lot in question which she began assessing in her name in the year 1954. In that year there was a meeting in the office of the late Judge Hugh Locke, a distinguished practicing attorney in Birmingham, between himself, the appellant, and Geneva Treadway, concerning the lot. Just what transpired at this meeting does not appear except that Geneva Treadway left with Mr. Locke certain receipts.

On January 18, 1963, Geneva Treadway filed a bill in equity against Nell McCary seeking specific performance of the contract. This bill was later amended to show that the appellant had sold the property to a third party in 1962 (the sale price was $900.00) and prayed as alternate relief that the respondent be required to reimburse the complainant for all payments made together with interest. The case finally came to trial in 1971, resulting in the following decree from which this appeal was taken.

"This cause came on to be heard and was submitted upon pleadings and proof as noted. Testimony was taken ore tenus, in Open Court.

"The prayer of the Bill of Complaint as amended is for the specific performance of a lease-sale contract executed by Complainant as Lessee-Purchaser and predecessor in title to the real property involved as Lessor-Seller. As alternative relief (because the real property involved has been sold by Respondent after the execution of the said contract and before the filing of this action) Complainant prays for a money judgment for the monies paid by Complainant to Respondent, or to her predecessor in title to the said property, under the said contract.

"The Court finds that Complainant is entitled to a money judgment based upon the above-stated alternative relief, the relief of specific performance being impossible to grant under the circumstances.

"Accordingly, it is CONSIDERED, ORDERED, ADJUDGED and DECREED as follows:

"ONE: A money judgment is awarded in favor of Complainant, Geneva Treadway, and against Respondent, Nell McCary, in the sum of FOUR HUNDRED SIXTEEN AND NO/100 DOLLARS ($416.00).

"TWO: The costs of this action are taxed to Respondent, Nell McCary, for which let execution issue.

"DONE and ORDERED this the 9th day of November, 1971.

Wm. C. Barber
CIRCUIT JUDGE IN
EQUITY SITTING"

The defenses interposed by the respondent's pleas were: The statute of limitations of 6 years for suits on contracts not under seal (Section 21 Title 7, 1940 Code), laches, and breach of the terms of the lease-sale agreement by the buyer and exercise of the rights given the seller to declare all sums paid to be considered rent in the event of breach by the buyer.

This case presents a situation difficult of a solution which can gratify the desideratum of doing full equity to all parties. The plight of the respondent, an aging widow, invites sympathetic understanding. The claim of the complainant is one of strong appeal to recognized equitable principles. The duty fell on the trial court to weigh the merits of the claim and the defense to it. The Chancellor could not escape the necessity for decision. The initial contract is an echo of a time of more modest business transactions and probably would not arise in today's inflated economy. Paying for a lot at the rate of $.50 a week for a period of 800 weeks suggests the meager means of the purchaser and smallness of the transaction from the viewpoint of the seller. But the ownership of the lot was evidently the goal of the buyer who year after year made irregular payments on the principal which payments were accepted without complaint from the seller or his agents, thus waiving their rights to insist on the strict performance of the contract terms. For over seven years the case lingered on the docket of the equity court before a final hearing was had. It is now thirty-seven years after the $.50 per week payments began.

We now discuss the three defenses of the appellant which we have heretofore mentioned as being raised by the pleading and which are the subject of the assignments of error.

■ One is that the buyer having breached the terms of the lease sale agreement, the seller and his successors had the option to treat all payments made as rent. The appellant claims that her sale of the property shows the exercise of that option. This argument overlooks the fact that the trial court could adduce from the evidence that the buyer had completed paying the purchase price and taxes in 1954. If full payment had in fact been made and accepted the option then expired, the buyer having fulfilled her obligation.

■■ Another defense to the action is that it was barred by the statute of limitations. There is no question but that the original bill was for the recovery of land within the purview of Section 20 of Title 7, Code of 1940, which fixes a ten year limitation for such actions. We say this for the reason that the final payment for taxes was made in December 1954, and the bill was filed in 1963. The prayer for reimbursement in the amended bill in the event specific performance was not possible did not change the nature of the action which was for specific performance. The owner could not escape her obligation to convey by herself making conveyance impossible and then rely on Title 7, Section 21, Code of 1940, the six year statute in defense.

■■ The remaining defense of laches cannot be sustained because it is essential to the application of this doctrine that harm results to the respondent from the non assertion of claim. In the present case the respondent suffered no ill effects from the delay. In 1962, she sold the lot for $900.00, this less than one year before the filing of the bill for specific performance. Although the respondent did show a very material change for the worse in her financial condition from the year 1954 until the date of trial, there was no evidence to show such a change between the time of the 1962 sale by her and the filing of the bill for specific performance. After calculating the amount awarded the complainant, $416.-00, and the amount that the respondent had paid in taxes which was less than one hundred dollars since she had begun assessing the property in her own name, she is in pocket rather than out of pocket as a re-

**340**

sult of the delay in the bringing of the suit. Instead of the owners receiving the contract price of $400.00 for the lot, it appears they received the sale price of $400.00 plus $900.00, or a total of $1300.-00. For the complainant to be reimbursed the sum of $416.00 paid by her does not in view of these circumstances seem inequitable even considering the payment of taxes and assessments. The decree is due to be affirmed.

Affirmed.

HEFLIN, C. J., and MERRILL, MADDOX and SOMERVILLE, JJ., concur.