314 So.2d 840

**Virginia Bailey LIPSCOMB et al.**

**v.**

**John H. TUCKER and Loma Gene Tucker.**

**SC 882, SC 882A.**

Supreme Court of Alabama.

May 22, 1975.

George A. Moore, Huntsville, for appellants George L. Bailey, III, and Patricia Bailey.

Cloud, Berry, Ables, Blanton & Tatum and James T. Baxter III, Huntsville, for appellants Virginia Bailey Lipscomb, Virginia Lee Bailey (Worley), Mary Alice Bailey Abercrombie, and Helen Jane Bailey Childers ("mortgagee-defendants") and

Dieter J. Schrader, Huntsville, for appellees.

BLOODWORTH, Justice.

On January 16, 1973, John H. Tucker and Loma Gene Tucker (plaintiffs-Tucker) filed a complaint in the Circuit Court of Madison County against Virginia Bailey Lipscomb, Virginia Lee Bailey, Mary Alice Bailey Abercrombie, and Helen Jane Bailey Childers ("mortgagee-defendants") and George L. Bailey, III, and Patricia A. Bailey ("defendants-Bailey").

The complaint seeks to:

(1) have a mortgage, executed by plaintiffs and defendants-Bailey as mortgagors in favor of the mortgagee-defendants, declared satisfied;

(2) enjoin the foreclosure of the mortgage;

(3) compel the specific performance of a contract for the sale of certain real property alleged to have been executed by plaintiffs as vendees and defendants-Bailey as vendors;

(4) obtain a money judgment against defendant George L. Bailey, III, for the excess profits allegedly received by Bailey in violation of a joint venture agreement.

The mortgagee-defendants answered the complaint by denying that the mortgage had been satisfied and disclaiming any knowledge of, or connection with, the other matters alleged in the complaint. The mortgagee-defendants then filed a counterclaim against the plaintiffs-Tucker and a cross-claim against the defendants-Bailey, alleging that the mortgage is in default and seeking a foreclosure.

In their reply to the counterclaim, the plaintiffs-Tucker deny that the mortgage is in default and allege that it has been paid in full.

In their answer to the cross-claim, defendants-Bailey admit that the mortgage is in default. In answer to the parts of the original complaint directed to both of them, defendants-Bailey deny the existence of the alleged contract for the sale of real property and interpose the affirmative defenses of statute of frauds, laches, and the statute of limitations.

As to that part of the original complaint directed only to him, which seeks a money judgment for breach of the joint venture agreement, George L. Bailey, III, interposes the affirmative defenses of laches and statute of limitations.

In its final decree, the trial court declared that the plaintiffs-Tucker are entitled to have the mortgage declared satisfied, that defendants-Bailey must specifically perform the contract for the sale of real property, and that plaintiff John H. Tucker is entitled to a money judgment against defendant George L. Bailey, III, in the amount of $38,633.82.

Separate motions for new trial by both sets of defendants were overruled, and both sets of defendants have taken separate appeals to this Court on the one record. After a careful consideration of the issues raised and arguments made, we affirm.

The circumstances from which this cause arose are as follows. When the father of

George L. Bailey, III, died intestate, a 98-acre tract of land which the father had owned, passed to all of the named defendants, except Patricia A. Bailey, wife of George L. Bailey, III. In 1962, plaintiff John H. Tucker and defendant George L. Bailey, III, ("Bailey") executed a joint venture agreement for the purpose of developing the Bailey family's 98-acre tract as a residential subdivision. Tucker and Bailey then purchased the tract from the mortgagee-defendants. It appears that the agreed consideration for the land was a $15,000.00 cash down payment, and a $147,000.00 promissory note (at no interest) secured by a real estate mortgage on the 98 acres. [The mortgagee-defendants also contend that they received an unsecured $34,000.00 promissory note as consideration. Tucker does not concede there is any evidence of such note.]

Tucker and Bailey along with one Aaron Bailey were the sole stockholders in Glen'll, Inc., which operated a trailer park. In April, 1964 Tucker and wife and Bailey and wife allegedly executed a written contract by which Tucker transferred all of his shares of Glen'll, Inc. stock to George L. Bailey, III, in exchange for the Baileys' promise to convey to the Tuckers, in an improved and unencumbered state, the Baileys' interest in the last 60 lots to be sold in the subdivision. Tucker and Bailey proceeded with the development of the land until about 1965. Since that date it does not appear that there have been any dealings between Bailey and Tucker with regard to the "joint venture."

In 1972, the mortgagee-defendants threatened foreclosure, and Tucker brought an action in December, 1972, to enjoin them. By agreement of the parties, that action was dismissed without prejudice and the instant action for declaratory judgment was filed January 16, 1973.

### SC 882

The primary complaint of the mortgagee-defendants on this appeal is that the evidence is insufficient to support the trial court's conclusion that the amount of the mortgage, $147,000.00 has been paid in full.

Prior to trial, the Tuckers formally requested the mortgagee-defendants to produce all papers reflecting credits on the mortgage indebtedness. Rather than produce any records, the mortgagees filed a "RESPONSE TO MOTION TO PRODUCE," in which they set forth the amount each individual had received. The amounts totaled $142,880.00. This response was later amended by "AMENDED RESPONSE TO MOTION TO PRODUCE," lowering the amount to $125,673.04, and setting forth in some detail the date and amounts of payments. [The mortgagee-defendants claimed the original amount erroneously included the down payment of $15,000.00 they had received.] In the "AMENDED RESPONSE" the mortgagee-defendants also stated that, as additional consideration for the land, they had received an unsecured promissory note for $34,000.00 and that when payments were received, the amounts were applied first to the unsecured note and then to the mortgage. [At trial, the mortgagee-defendants filed a second "AMENDED RESPONSE" and reduced the total amount received even further to $111,903.04 (excluding down payment). The court rejected this document because it held that it was untimely filed.]

Tucker stipulated that $140,673.04 (shown in the "AMENDED RESPONSE") was correct with "respect to the dates that are supplied." [Tucker included therein $15,000 down payment.]

Tucker testified that he agreed with the amount shown by the first "AMENDED RESPONSE" to have been paid insofar as it went ($125,673.04). Tucker then introduced into evidence ten checks, totaling $16,350.00, which he claimed were not reflected in the "AMENDED RESPONSE." Tucker also testified that he and George L. Bailey, III, conveyed two lots (worth $16,000.00 and $3,700.00, respectively) to two of the mortgagees as part payment on

the indebtedness. Thus, Tucker testified that, exclusive of the $15,000.00 down payment, he and George L. Bailey, III, had paid the mortgagee-defendants more than $147,000.00, the amount of the mortgage.

None of the defendants testified.

In addition to their contention that the evidence as a whole is insufficient to support the decree, the mortgagee-defendants also raise the following specific issues for decision by virtue of their assignments of error and arguments addressed thereto: A. Whether or not Tucker, having relied on the amounts stated in the "AMENDED RESPONSE" to the motion to produce, is bound by the rest of the "AMENDED RE-SPONSE" which states that the amounts received were first applied to the satisfaction of an unsecured promissory note; B. Whether or not Tucker, as co-mortgagor of Bailey and co-joint venturer in the development of the mortgaged property is bound by Bailey's admission of default on the mortgage which is contained in Bailey's answer to the cross claim of the mortgagee-defendants; C. Whether or not Tucker's testimony, that he paid by check the amount he claims to have paid on the mortgage indebtedness, is competent evidence of payment, when not all the canceled checks themselves were produced and admitted in evidence; D. Whether or not Tucker's testimony, as to the amount of credit on the mortgage debt he and Bailey were to receive for the two lots they conveyed to two of the mortgagee-defendants, is competent evidence.

## A.

█ If a debtor owes two different debts to the same creditor, one debt being secured and the other being unsecured, the debtor has the right, at the time of payment, to direct the application of the partial payments. However, if the debtor does not direct the application of his partial payments to one or the other of the debts, then the creditor, at the time of payment, may elect to apply the payments to either of the debts. If neither debtor nor creditor expresses an election, it is presumed that the credit is to be applied most beneficially to the creditor, that is, to the most precarious debt or to the one least secured. *Lee v. Southern Pipe and Supply Company,* 283 Ala. 37, 214 So.2d 313 (1968).

Thus, mortgagee-defendants contend that even if Tucker and Bailey paid the amounts testified to by Tucker, the mortgage debt has not been paid in full because the total of the payments does not equal the sum of the mortgage debt and an unsecured note. This argument, however, assumes the existence of an unsecured note other than the mortgage debt, subject of this suit.

The only evidence as to the existence of an unsecured note is contained in one part of the mortgagee-defendants' first "AMENDED RESPONSE" to Tucker's motion to produce.

By the use of other parts of the mortgagee-defendants' "AMENDED RE-SPONSE," Tucker offered proof, apparently to the satisfaction of the trial judge, that he and Bailey had paid the amounts therein stated to the mortgagee-defendants. Tucker also offered proof to the trial judge that, besides those amounts, he and Bailey made additional payments and that the total of all payments was sufficient to satisfy the mortgage.

The mortgagee-defendants contend that when Tucker used those parts of the "AMENDED RESPONSE" which were favorable to him, he became conclusively bound by the statement in the "AMEND-ED RESPONSE" that there was an unsecured note and that payments were applied first thereto. We cannot agree.

█ None of the mortgagee-defendants testified about the existence of the note. Tucker was not asked on cross-examination about the note. The note was not produced at trial and was not offered in evidence.

The mortgagee-defendants never offered into evidence their "AMENDED RESPONSE" which referred to the note. In fact, there is no indication that the reference in the "AMENDED RESPONSE" as to the existence of the note would be considered except the trial judge's statements (during trial when the "AMENDED RESPONSE" was offered into evidence by plaintiffs-Tucker)—"It's in the record," and "It's a part of the record."

■ The trial judge did not make any "findings" pursuant to Rule 52, *A.R.C.P.* When the trial judge does not make express findings of fact, this Court must nevertheless assume that the trial judge found facts which would support his decree, unless such a finding would be clearly erroneous and against the great weight and preponderance of the evidence. *Grund v. Jefferson County,* 291 Ala. 29, 277 So.2d 334 (1973).

Tucker did not contradict the statement in the "AMENDED RESPONSE" as to the existence of the unsecured note no doubt because the mortgagee-defendants made no mention of it during the trial.

■ Giving mortgagee-defendants the benefit of the doubt and assuming that the references in the "AMENDED RESPONSE" to the unsecured note were sufficient to put into evidence the question as to the existence vel non of the note, we cannot, under the circumstances of this case and our rules of review, say that the trial court erred in not crediting payments on the unsecured note. To the contrary, it would appear that the court found the note did not exist. Thus, mortgagee-defendants' argument that Tucker's and Bailey's payments were first applied to an unsecured debt must fail.

## B.

In their answer to the mortgagee-defendants' cross-claim against them, George L. Bailey, III, and wife, admitted that the mortgage was in default. It is contended by the mortgagee-defendants that the Baileys' admission was admissible in evidence against Tucker and precluded proof by Tucker to the contrary in his action against the mortgagee-defendants to have the mortgage declared satisfied, citing *Hutchins v. Childress,* 4 Stewart & Porter 34 (1833) and 29 Am.Jur.2d, Evidence & 699, p. 756.

In *Hutchins v. Childress,* supra, the general rule is stated:

"* * * The admissions of one partner are not evidence to establish the existence of the partnership; but after its existence has been otherwise proven, or admitted, 'the act or declaration of one, relating to the subject matter of the partnership, will bind all.' G. on Part. 211. The admissions of Baker, by his answer, ought to have been received as evidence, to prove the existence of the debt, his denial of his agency, &c.

"A consequence of the same doctrine is, that the defendants ought not to have been permitted to introduce proof to discredit the admissions of Baker, which had been given in evidence against them by the plaintiff. The judgment must be reversed, and the cause remanded for further proceedings." (4 Stewart & Porter at pp. 43, 44)

■ Of course, if it be shown that the admission serves the interest of the partner making the admission and disserves the interest of the partnership and other partners, the admission is not admissible against the partnership or non admitting partners. *2 McElroy,* Law of Evidence in Alabama, § 195.07(2)(b).

The mortgage in the instant case was the subject of the joint venture agreement between Tucker and Bailey. It was established that Tucker still regarded the joint venture agreement to be in effect. With respect to matters growing out of a joint venture agreement the above stated rule and exceptions thereto would apply to joint

venturers as well as partners. *Murphy v. Dees,* 293 Ala. 529, 307 So.2d 1 (1975).

■ Bailey's admission of default was contained in his separate answer to the cross-claim filed against him by the mortgagee-defendants. The admission was never offered in evidence against Tucker on Tucker's separate claim against the mortgagee-defendants nor against Tucker on the mortgagee-defendants' counterclaim against him. Neither did the mortgagee-defendants move for judgment on the pleadings or object to the admission of Tucker's evidence of payment on the ground that the issue was precluded. [The effect to be given to Bailey's admission as to Tucker's complaint was not even raised on motion for new trial.]

In short, the mortgagee-defendants have preserved nothing for our review. Had the mortgagee-defendants properly raised the matter in the trial court, Tucker, in accord with the exception to the general rule, would have had the opportunity to show that George L. Bailey, III, being the son of one of the mortgagee-defendants and brother of the others, would benefit by a foreclosure. (Although Tucker does contend that the evidence shows that Bailey would benefit by the foreclosure by virtue of his close family ties with the mortgagee-defendants, and for other reasons, it is not necessary that we decide these matters in view of our conclusion that the issue is not presented for our review.)

### C.

In order to establish payment, Tucker testified he agreed with the amounts shown in the mortgagee-defendants' "AMENDED RESPONSE" and that he paid these amounts and other sums by check. It is contended by mortgagee-defendants that Tucker's testimony is incompetent because the checks themselves are the "best evidence" of payment, citing *Fletcher v. Riley,* 169 Ala. 433, 53 So. 816 (1910).

■ The cited case does not stand for this proposition but merely sets forth the rule that if a witness has no personal knowledge as to the payment of a debt, independent of what is evidenced by a written instrument, the witness may not testify as to the contents of the instrument, the instrument itself being the "best evidence" of what it contains.

Contrary to the mortgagee-defendants' contention, this Court said in *McCord v. Bridges,* 209 Ala. 529, 96 So. 432 (1923), viz.:

"There was no error in permitting the question and answer, as to the mortgage in question, to the effect that it 'was paid in full before this suit was brought.' It was a statement of the fact of payment, subject to be tested by cross-examination of the witness. The affirmative answer was not a conclusion of the witness. It might have been of doubtful probative force, if not accompanied by specific facts, showing the payment or the circumstances corroborative thereof. * * *"

■ Tucker testified of his own knowledge that he had paid certain amounts by check to the mortgagee-defendants on the mortgage. As stated in *McCord,* supra, such testimony may be of doubtful probative force, but such goes to the weight to be given the testimony and not its competency. Moreover, Tucker's testimony was corroborated by the "AMENDED RESPONSE" of the mortgagee-defendants and there is no contention that the checks given were not finally paid by the bank upon which they were drawn.

### D.

Once again, we are confronted by the much beleaguered but little understood "best evidence rule" which is usually invoked with the shorthand phrase, "the instrument speaks for itself."

■ Tucker testified that he and Bailey conveyed two lots to two of the mort-

gagee-defendants as partial payment on the mortgage indebtedness. The deeds of conveyance were received in evidence and Tucker testified that the grantees had taken possession. The deeds recited a consideration of $10.00 and other valuable consideration. Tucker then testified, over objection, that the two mortgagee-defendants, who received the deeds, had agreed that Tucker and Bailey would receive $19,700.00 credit on the mortgage in consideration for the conveyances. The sole ground of objection argued on this appeal is that the deed tax stamps on the two deeds are the "best evidence" of the agreed consideration. The only authority offered in support of the ground of objection is Tit. 51, § 618, Code of Alabama 1940 (Recompiled 1958) which simply provides that a tax of fifty cents per five hundred dollars' value shall be collected on the filing of deeds which state only nominal consideration. [The deed tax stated to have been paid on each of the deeds is fifty cents.] We find mortgagee-defendants' argument to be without merit.

The issue to be proved was not the "value" of the lands conveyed but the agreed consideration for the conveyances to be credited on the mortgage.

■ If the receipt of valuable consideration is recited in a deed, the recital is merely prima facie evidence of the full agreed consideration and parol evidence is admissible to show that other and additional valuable consideration was to be received by the grantor such as additional money or credit on a pre-existing debt or mortgage. See cases collected at 9 *Ala.Dig.,* Evidence, Key No. 419(1)–(6). Thus, Tucker's testimony was competent and not in violation of the "parol evidence" rule or "best evidence" rule.

We have carefully examined the record in light of the specific errors assigned and argued and find no reversible error therein.

■ Again, we reiterate our oft stated rule that when the evidence is heard ore tenus, the decree of the trial court must be affirmed if fairly supported by the evidence under any reasonable aspect, regardless as to what the reviewing court's view of the evidence might be. *Lott v. Keith,* 286 Ala. 431, 241 So.2d 104 (1970). Putting the rule differently, the decree of the trial court, which heard the evidence orally, is favored with a presumption of correctness and will not be disturbed on appeal unless plainly erroneous or manifestly unjust. *Kubiszyn v. Bradley,* 292 Ala. 570, 298 So.2d 9 (1974).

We have examined the entire record in the light of our rules of review and find that the decree is supported by the evidence. The judgment against the mortgagee-defendants is affirmed.

### SC 882A

As to the parts of the decree which require Bailey to specifically perform the alleged contract for sale of real property, and to pay Tucker his share of the joint venture proceeds, the issues are these: I. Whether or not there was competent evidence to support specific performance of a contract for the sale of real property in that the alleged written contract was not offered in evidence, or alternatively stated, whether or not Tucker laid the proper predicate for his oral testimony as to the terms of the written contract; II. Whether or not the action for specific performance is barred by laches and/or the six-year statute of limitations; III. Whether or not the action by Tucker against Bailey for the joint venture proceeds is barred by the six-year statute of limitations.

### I.

Tucker testified that when he signed the alleged contract for the sale of realty, he was familiar with its provisions, and that he saw his own wife, Bailey, and Bailey's wife sign the contract. The signing took place in April, 1964, in the offices of Cloud, Berry, and Ables, who at the time represented both Tucker and Bailey, but

who now represent the mortgagee-defendants. To further substantiate his claim that such a written contract was executed, Tucker offered in evidence a bill from Cloud, Berry, and Ables for "Preparation of Agreement between John H. Tucker and wife, and George L. Bailey and wife, nullifying April, 1964, agreement * * *." The "nullifying agreement" was also offered in evidence. The latter agreement clearly refers to a real-estate contract executed by Tucker and wife and Bailey and wife on April 13, 1964. [The nullification of the April, 1964, contract was expressly conditioned on certain events taking place which Tucker testified never occurred.]

Tucker also testified that he received neither the original nor a copy of the contract but that it was kept by Cloud, Berry, and Ables.

In response to motions to produce, defendants-Bailey and their attorneys and the mortgagee-defendants and their attorneys, Cloud, Berry, and Ables, denied having the original, or even a copy thereof.

After laying this predicate, Tucker was allowed to testify to the terms and contents of the written contract over the objection of Bailey's attorney.

The case of *Wiggins v. Stapleton Baptist Church*, 282 Ala. 255, 210 So.2d 814 (1968) is dispositive of this issue and supports the trial court's admission of parol evidence to prove the terms of the written contract.

In *Wiggins*, supra, it was held that the following facts must be established to the satisfaction of the trial court in order to justify the admission of parol evidence as to the contents of a written instrument:

> "* * * (1) the *existence and execution* of the original paper, as a genuine document; (2) the *substance* of its contents; (3) *its loss, destruction, absence* from the State, *or other satisfactory reason for failure to produce the*

*original*, which may be shown by such diligent search for it as would raise a *reasonable presumption of such loss or absence*." [Emphasis supplied.] (282 Ala. at 260, 210 So.2d at 819)

The Court also quoted with approval from 1 *Greenleaf on Evidence*, § 558, as follows:

> " ' "If the instrument is lost, the party is required to give some evidence that such a paper once existed, though slight evidence is sufficient for this purpose, and that a *bona fide* and diligent search has been unsuccessfully made for it in the place where it was most likely to be found, if the nature of the case admits such proof. What degree of diligence in the search is necessary it is not easy to define, as each case depends much on its peculiar circumstances; and the question whether the loss of the instrument is sufficiently proved to admit secondary evidence of its contents is to be determined by the court and not by the jury. *But it seems that, in general the party is expected to show that he has in good faith exhausted, in a reasonable degree, all the sources of information and means of discovery which the nature of the case would naturally suggest and which were accessible to him.*" ' " [Emphasis supplied.] (282 Ala. at 260, 210 So.2d at 819)

From the foregoing, it is clear that Tucker laid the proper predicate for the admission of parol testimony as to the terms of the written contract. He exhausted all the means of discovery which were available to him.

II.

The alleged written contract for the sale of the realty was executed in April, 1964. The action was not brought until January, 1973. Bailey contends that action on the contract is barred by laches or the six-year statute of limitations applicable to promises in writing not under seal. Tit. 7, § 21, Code of Alabama 1940 (Recompiled 1958).

Even before the merger of law and equity by virtue of Rule 1, *A.R.C.P.*, the various statutes of limitation were applicable to both actions at law and in equity. Tit. 7, § 18, Code of Alabama 1940 (Recompiled 1958).

Under the new rules, it appears clear that the various statutes of limitation are to be applicable to all actions seeking the type of relief heretofore granted only by courts of equity. Before the adoption of *A.R.C.P.*, the doctrine of laches was also available as a defense to the granting of equitable relief independently of the operation of the statutes of limitation. *McCary v. Robinson,* 272 Ala. 123, 130 So. 2d 25 (1961). [Because it is not necessary to the result we reach, we will not consider whether this rule has been changed, but will assume that laches, independent of the statute of limitations, is also available as a defense as it was under prior practice.]

It is not disputed that the contract at issue was signed more than six years before the instant suit was filed. This, however, is irrelevant. A statute of limitations does not begin to run when a contract is consummated but when the contract is breached and a cause of action therefor accrues. Tit. 7, § 18, Code of Alabama 1940 (Recompiled 1958). Tucker testified that, by the terms of the contract, Bailey was not bound to convey his interest in the land to Tucker until the mortgage on the land had been satisfied. Formal satisfaction did not occur until the decree in the instant case was rendered against the mortgagee-defendants. If it is regarded that Tucker should have taken action within six years after the last payment on the land was made, the suit for specific performance is still not time barred. The evidence shows that one of the conveyances from Tucker and Bailey to one of the mortgagee-defendants in part payment on the mortgage was made on July 8, 1967. This appears to be the last payment. Suit was filed within six years thereafter in January, 1973. Thus, under either view, Bailey's contention that the action is barred by the six-year statute is not supported by the evidence.

When laches in addition to the statute of limitations is raised but the action is not barred by limitations, mere delay is not sufficient for the defense of laches, but special facts which make the delay culpable must appear. *Southern States Fire Ins. Co. v. Kelley,* 186 Ala. 259, 65 So. 328 (1914); *Gulf Red Cedar Co. v. Crenshaw,* 138 Ala. 134, 35 So. 50 (1902).

For the doctrine of laches to be applicable, it must appear that harm or prejudice has resulted from the delay. *McCary v. Treadway,* 289 Ala. 334, 267 So.2d 410 (1972). The burden of showing prejudice when not shown on the face of the complaint rests on the one invoking laches. *Blythe v. Enslen,* 219 Ala. 638, 123 So. 71 (1929).

From an examination of the record we cannot say that the trial court erred in failing to find that Bailey has been prejudiced or changed his position because of the delay. To the contrary, it appears that the status quo has been maintained.

### III.

Bailey also contends that the action by Tucker against Bailey for Tucker's share of the joint venture proceeds is barred by the six-year statute of limitations inasmuch as the last transaction involving the joint venture occurred more than six years before suit was filed. However, the six-year statute is simply not applicable. The joint venture agreement is in evidence, is in writing under seal, and is therefore subject to the ten-year statute of limitations. Tit. 7, § 20 Code of Alabama 1940 (Recompiled 1958). The action was filed less than ten years after the last transaction.

What we have already said with regard to laches is also applicable to the accounting sought by Tucker.

We have examined the entire record in light of the errors assigned and substantially argued in brief and have found no reversible error.

Let the judgments stand affirmed.

Affirmed.

HEFLIN, C. J., and FAULKNER, ALMON and EMBRY, JJ., concur.