FAULKNER, Justice.
Crawford as receiver of Vanguard Security Life Insurance Co. brought suit against Multiple Business Insurance Services, Inc. for $103,953.07. Following a hearing without a jury the circuit court entered judgment in favor of the receiver for $54,240.45. Even though this case must be reviewed under the principle of the ore tenus rule, we can find no evidence to support the trial court’s ruling and must therefore reverse.
Multiple Business Insurance Services, Inc. (the Trust) is an insurance trust which sells accident and health insurance and life insurance. In August, 1975, the Trust entered into a contract of reinsurance with Vanguard. That contract was cancelled as of October 31,1976, but with the agreement that the Trust would continue to pay claims incurred prior to October, 1976, but unreported until December 31, 1976.
The Trust and Vanguard had an arrangement whereby the Trust collected premiums and deposited them in an account from which claims would be paid under Vanguard’s name. Funds not needed for the payment of claims were remitted to Vanguard directly. The Trust also maintained several operating accounts of its own. The receiver’s suit asserted that the Trust had received premiums due Vanguard but had not paid the premiums over. The Trust *2 defended on the grounds that the sums due had been properly paid out in claims brought against Vanguard. The suit turned on one question: Did the Trust receive notice to stop paying claims when Vanguard was placed in receivership?
The following information was adduced at the hearing:
On November 29, 1976, Judge Carter of Montgomery County Circuit Court placed Vanguard in receivership and named Charles Crawford, an employee of the State Insurance Department, as receiver. On that same day Crawford went to Vanguard’s offices in Montgomery to advise affected parties of Judge Carter’s order. While in Vanguard’s offices Crawford spoke on the phone with Henry, the trustee of Multiple Business Insurance Services, and informed him that Vanguard was in receivership. Both Crawford and Henry testified about this conversation. Crawford stated that he discussed the receivership “in very general terms” with Henry in conversation which lasted “5, 10 [minutes] at the most” and that he did not remember that much of the details of the discussion. Crawford thought he told Henry not to write any more checks on Vanguard’s account but he did not ask how many accounts might be involved. In Crawford’s own words, “I tried to get the information to him that no claims were to be paid, because [of] the possibility of proration of claims.”
Henry testified that the conversation lasted “2 to 3 minutes . . . not over five” and that Crawford told him to freeze Vanguard’s claims account. Henry stated that the payment of claims as such was not discussed. It was undisputed that the Trust did not receive any written notice or a copy of Judge Carter’s order until January 5,1977, when Henry obtained a copy of the order from the Insurance Department.
Following their conversation on November 29 Henry turned over the Vanguard account, which contained $5,000 to $6,000, to Crawford. The Trust, however, continued to receive premiums which were deposited in the Trust’s other accounts and it continued to pay claims of over $50,000 out of those premiums. During the month of December Henry made several attempts to contact Crawford for further instructions but was unable to do so.
On December 16, 1976, Judge Carter entered an additional order placing a moratorium on the payment of claims. The Trust did not receive a copy of this order, nor was it informed of the order’s existence.
From the above outline of the facts it is apparent that the only attempt Crawford made to notify the Trust to stop paying claims was in a very brief phone call made at a time when confusion reigned in Vanguard’s offices. Crawford admitted that he did not remember the details of his conversation with Henry and at best could only state what he tried to convey. His lack of success is apparent from the fact that the Trust continued to pay claims, even though the Trust did not stand to benefit from these payments, and, in fact, could only incur liability by doing so. Henry complied with his instructions from Crawford by turning over Vanguard’s account. When he tried to get further instructions on the payment of claims he was unable to do so. Crawford never sent the Trust copies of Judge Carter’s orders. Even if it could be said that the Trust was put on inquiry by its knowledge of the receivership, Henry’s attempts to gain information through phone calls and trips to Montgomery were totally unsuccessful through no fault of his own. Under these facts we cannot agree with the trial court that the Trust had no “legally cognizable excuse or justification for nonpayment.” The premiums received were paid out in claims as called for in the parties’ contract. Crawford’s brief and ambiguous phone call did not effectively notify the Trust to stop paying claims. To find that Crawford gave effective notice to the Trust is “plainly erroneous and manifestly unjust,” particularly in light of the Trust’s repeated efforts to obtain instructions on payment of claims. Consequently, the judgment of the trial court must be reversed. Taylor v. Godsey, 357 So.2d 979 (Ala.1978), Lipscomb v. Tucker, 294 Ala. 246, 314 So.2d 840 (1975).
REVERSED AND REMANDED.
*3 EMBRY, J., concurs.
BLOODWORTH, J., with whom TOR-BERT, G. J., and ALMON, J., concur, concurs in the result.