[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 118 
Suit was brought by the appellee, Eloise Thomaston, against the appellant, Mabel Thomaston, seeking the partition or sale for division of 564 acres of land in Baldwin County.
Eloise and Mabel are daughters of Lucinda Cooper Standard. Mabel is the wife of Charles L. Thomaston and Eloise is the wife of Lawrence B. Thomaston. Charles and Lawrence are brothers.
Elosie alleged in her complaint that she and Mabel jointly own the property in question. Her suit is based on a 1967 deed and the claim that she inherited her share of the property from John Standard, who died intestate and who she claims to be her father.
Mabel answered and filed a counterclaim to quiet title in herself, asserting that the 1967 deed was procured by fraud and undue influence. Mabel further contends that Eloise is not the daughter of John Standard and therefore owns no interest in the property.
After a jury trial the court directed a verdict against Mabel on her counterclaim and ordered the land sold for division of the proceeds.
In 1933 the land was conveyed to Mabel's father, John Standard. In 1944, John, then 62 years old, married Lucinda Cooper, who was 33 years old. At the time of this marriage Lucinda had a 10-year-old daughter, Eloise Cooper, the appellee. Shortly after John and Lucinda's marriage, Mabel Standard, the appellant, was born.
In 1953 John Standard died intestate. His widow, Lucinda, petitioned the probate court and was appointed administratrix of her husband's estate and guardian for the then-8-year-old Mabel. Eloise was 19 at this time. Mabel testified that she had not been told, nor did she know, that her mother had been appointed as her guardian, until July of 1980.
In 1960 Lucinda filed a petition as guardian for Mabel, requesting authority to execute a mineral lease on the property owned by John Standard at his death and to obtain a determination of her dower rights in the proceeds from the lease. In these proceedings Lucinda stated under oath that Mabel was the only child of John Standard. Lucinda also acknowledged that her only interest in the property was her dower interest. Lucinda took no further action with regard to the property in her capacity as administratrix of the estate or as guardian.
In 1967 Lucinda, Eloise, and 23-year-old Mabel signed a deed which gave Lucinda a life estate in the property with the remainder to Eloise and Mabel equally as tenants in common. Mabel testified that at the time she signed this deed she was under the belief that she and her mother each owned a half interest in the property. She thought that Eloise was acquiring the half interest which her mother held. She testified that she had been told all her life by her mother and Eloise that she and her mother each owned a half interest in the property. Mabel testified that the property was disposed of in this fashion because that is the way her mother wanted it.
Mabel took no part in the preparation of the 1967 deed. She testified that it was her mother and Eloise who had the deed prepared. Both Lucinda and Eloise asked her to go to their attorney's office to sign the deed. There was no monetary *Page 119 
consideration exchanged, although the deed recited otherwise. Eloise Cooper's name appeared as Eloise Standard in the deed.
In 1977 Mabel and Eloise signed a mortgage on 40 acres of the property which secured a loan to pay off a previous debt. The mortgage was executed because that was the way Lucinda wanted the payment of the loan handled. As with all other mutual debts, the mortgage is being paid from a joint checking account in the names of both Mabel and Eloise. The joint account is funded by income from the property.
Mabel testified that she first looked at the estate and guardianship records because of something her uncle, W.C. Bryant, said. He had told her that Eloise's attorney had told him that something needed to be done about John Standard's estate because it had not been settled. She testified that she was confused by this statement, because she knew she had signed the 1967 deed. When Mabel told Eloise that they needed to do something about the property, Eloise told her not to get involved because they might have to pay probate costs and the property should be left the way their mother had wanted it.
Within one week after this conversation, Mabel went to the probate office and discovered the records from the estate and guardianship proceedings. Within a few days, on or about July 30, 1980, she went to see an attorney to have him research the status of the title of the property. On August 8, 1980, her attorney informed her that since she was the only child of John Standard, under the laws of intestate succession in effect at the time of her father's death, the property passed to her subject to Lucinda's dower (life) interest. For the first time she found out that at the time she signed the 1967 deed Lucinda only had a life interest, not a half interest as Lucinda and Eloise had said. Mabel's attorney testified that Mabel appeared to be surprised to find out the true nature of the title to the property.
Eloise filed suit for partition or sale and division on March 3, 1981, one day after Lucinda died. Mabel filed her counterclaim on July 29, 1981. At the conclusion of the trial the court granted a directed verdict for Eloise on Mabel's counterclaim and instructed the jury to return a verdict that the property should be sold and that the proceeds be divided equally between the parties.
The directed verdict would have been proper only if there was a complete absence of proof on an issue material to the counterclaim or if there was no disputed question of fact on which reasonable people could differ. Ritch v. Waldrop,428 So.2d 1 (Ala. 1982). The standard by which the trial court must determine the propriety of granting a motion for a directed verdict, and likewise the standard upon review, is the scintilla rule. Turner v. Peoples Bank, 378 So.2d 706 (Ala. 1979). The function of an appellate court in reviewing a motion for a directed verdict is to view the entire evidence, and all reasonable inferences which a jury might have drawn therefrom, in the light most favorable to the nonmoving party. BeloitCorp. v. Harrell, 339 So.2d 992 (Ala. 1976); CaterpillarTractor Co. v. Ford, 406 So.2d 854 (Ala. 1981).
Eloise contends the trial judge was correct in granting the directed verdict because (1) there was no evidence of fraud, or (2) Lucinda, not Eloise, committed fraud, or (3) Eloise was recognized by John Standard as his daughter, Code 1975, §26-11-1, or (4) the counterclaim is barred by the statute of limitations or laches.
There is substantial evidence of fraud on the part of Lucinda. She occupied a confidential and fiduciary relationship with her daughter Mabel. In the 1960 guardianship proceedings Lucinda acknowledged that her only interest in her husband's estate was a dower interest. Mabel testified that Lucinda told her that she and Mabel each owned a half interest in the property. Based on this, and the other statements by Lucinda to the same effect, Mabel signed the 1967 deed. Fiduciary relations between parties impose a high moral *Page 120 
and legal duty of disclosure. American Bonding Co. of Baltimorev. Fourth National Bank, 206 Ala. 639, 91 So. 480 (1921). A fraud claim may be maintained where a party knows a material fact and is under a duty to disclose that information and fails to do so. Shelter Modular Corp. v. Cardinal Enterprises, Inc.,347 So.2d 1334 (Ala. 1977).
There is also evidence in the record that Mabel was unduly influenced by Lucinda and Eloise into signing the 1967 deed. In the limited testimony allowed into evidence, Lucinda and Eloise were described as "domineering" and "manipulative." Mabel was described as quiet and shy. The testimony indicated that Mabel always did what Lucinda told her to do to a greater extent than was normal between parent and child.
Mabel was first approached by Eloise about a transaction which eventually culminated in the signing of the 1967 deed. Lucinda told Mabel to sign the deed. The deed was prepared by Lucinda and Eloise.
Eloise contends that even if fraud was practiced by Lucinda, that fraud cannot be imputed to her. She cites Hall v. Hulsey,271 Ala. 576, 126 So.2d 217 (1961), in support of her contention. In that case Hall deeded real property to his second wife, for her life, and a remainder to her child or children. After the grantor's death, his children by a former marriage filed suit to cancel the deed for fraud. It was alleged that the second wife, who was the grantee of a life estate, had defrauded the grantor by misrepresenting to him that she was capable of contracting marriage to him. In fact, she had been previously married and had not divorced her former husband when she married the grantor. Although the court found the claim to be barred by the statute of limitations, it observed that the fraud of the second wife, if any, could not be imputed to her child, who was the grantee of the remainder. The Court specifically noted:
 "[T]here was no fiduciary or confidential relationship between appellants [stepchildren] and appellee [the child] or her mother.
". . . .
 ". . . [the child] did not participate in any fraud, did not authorize it, did nothing to mislead, deceive or lull anyone into repose. The fraud of her mother, Bertha, could have affected Bertha's enjoyment of the life estate, but could not affect [the child's] title."
Id., 271 Ala. 578-79, 126 So.2d at 216-217.
The Hall case is not controlling in this instance because there is at least a scintilla of evidence that Eloise misled or lulled Mabel into taking no action regarding the estate. Moreover, the Hall case was decided on the statute of limitations and adverse possession.
Eloise asserts that the trial court was convinced, as a matter of law, that under Code 1975, § 26-11-1, John Standard recognized Eloise as his daughter and that she did in fact inherit from him, although illegitimate. If Eloise inherited from John Standard, then Mabel suffered no damage as a result of the 1967 deed and, as a matter of law, there could have been no fraud.
Code 1975, § 26-11-1, and cases interpreting it provide that a child may be legitimated by the marriage of the parents and the clear and unambiguous recognition of the child by the father. The issues of legitimation and recognition were hotly disputed at trial. Mabel testified that her father, John Standard, never treated Eloise as his daughter. She introduced evidence that when Eloise was born she was given the last name of Cooper, not Standard. Cooper was Lucinda's maiden name. The information on Eloise's birth certificate concerning her father was left blank. Eloise admitted that she never went by the name of Standard prior to her first marriage. Eloise called John Standard "Johnny" instead of "Dad" or "Father." Mr. Melvin Duke, a lifelong acquaintance of Lucinda, testified that in 1958 Lucinda told him that Eloise was not John Standard's daughter. In the 1960 guardianship proceedings Lucinda admitted that Mabel was the one and only child of John Standard. *Page 121 
The issue of whether John Standard recognized Eloise was a disputed factual question which should have been resolved by the jury.
Eloise asserts that the directed verdict could be supported by a finding that Mabel's counterclaim is barred by the statute of limitations. The deed in question was signed in 1967. The counterclaim seeking to cancel the deed was filed in 1981, some 14 years after the execution of the deed.
An action to recover land is ordinarily governed by the ten-year statute of limitations. Code 1975, § 6-2-33. However, Code 1975, § 6-2-3, provides that when the action is based upon fraud and the statute has created a bar, the claim must not be considered as having accrued until the discovery of the fraud, after which the aggrieved party must file an action within one year.
Mabel testified that she did not become suspicious that something was wrong until her uncle told her in 1980 that her father's estate needed to be settled. She says that on or about August 8, 1980, after having consulted an attorney, she knew for the first time she had been defrauded. The question of whether she should have discovered the fraud sooner is a question for the jury. Ryan v. Charles Townsend Ford, Inc.,409 So.2d 784 (Ala. 1981); Sims v. Lewis, 374 So.2d 298 (Ala. 1979).
In addition to the statute of limitations, Eloise asserts that Mabel's counterclaim is barred by laches. When a party asserts that a claim is barred by laches in a case where the action is not barred by the statute of limitations, mere delay is not sufficient for the defense of laches. Special facts must appear which make the delay culpable. Lipscomb v. Tucker,294 Ala. 246, 314 So.2d 840 (1975). The record fails to disclose that Mabel's delay was culpable. This Court is not persuaded that the counterclaim should be barred by laches.
We are of the opinion that the court was in error in granting the directed verdict and that Mabel is entitled to a jury trial on the issues raised by her counterclaim.
Mabel raises several evidentiary issues in her brief. We will allude to some of them generally because of the likelihood of recurrence.
Objections were sustained on the basis of the dead man's statute, Code 1975, § 12-21-163, to questions asked Mabel as to what Lucinda told her regarding ownership of the property. It appears that these questions should have been allowed, because Lucinda's estate is not interested in the outcome of the suit.
Four witnesses who were lifelong acquaintances of Lucinda and her daughters were not allowed to testify as to family relationships existing among them. In cases like the present one, testimony of this kind is usually admissible, especially on such issues as who the dominant parties were and whether Mabel was in fact lulled into inaction, and on the issue of when should Mabel have discovered the alleged fraud.
Last, Mabel contends that the trial court erred in not allowing a lifelong acquaintance and relative to testify as to what his father, also a relative of the parties, had told him about the parentage of Eloise. The trial court sustained Eloise's objection that the question calls for a hearsay response. The general reputation among family members is normally admissible to prove the parentage and legitimacy of a claimed family member. Lay v. Fuller, 178 Ala. 375, 59 So. 609
(1912); Cavin v. Cavin, 237 Ala. 185, 185 So. 741 (1939);McCrary v. Matthews, 235 Ala. 409, 179 So. 367 (1938); Martinv. Martin, 233 Ala. 310, 171 So. 734 (1937).
The judgment is hereby reversed and the cause is remanded for a jury trial.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, ALMON, EMBRY and ADAMS, JJ., concur. *Page 122